ENGEBRETSON vs. THE HEKLA FIRE INSURANCE COMPANY.

*September 28 — October 23, 1883.*

INSURANCE AGAINST FIRE. NONSUIT. *(1, 2) Evidence of waiver of condition as to proofs of loss. (3) Powers of local agents.*

1. A policy of insurance against fire made it a condition precedent to a right of recovery thereon that the assured render to the company at its office in Madison, within ten days after the fire, a sworn statement of the loss, etc. In an action on the policy it appeared that a loss occurred July 19, 1881, but that no statement thereof was furnished until February 1, 1882; that the secretary of the company immediately returned the statement, saying that it came too late, and that for that reason and sundry others the company denied liability on the policy; that on February 3 the president of the company wrote to the plaintiff that, after investigation, the adjuster did not believe the company was liable, either in law or equity, for any damages, and that he concurred with

| | |
|---|---|
| 58 | 301 |
| 75 | 204 |
| 58 | 301 |
| 80 | 397 |
| 58 | 301 |
| 81 | 340 |
| 58 | 301 |
| 108 | 496 |
| 108 | 497 |

the adjuster. The plaintiff testified that on the day after the fire (July 20, 1881) he notified the local agents of the company at La Crosse, who told him it was all right (meaning the loss), and that they would notify the company and the adjuster at once, and the adjuster would come up there and pay him in a few days; that on July 26 he called upon the same agents, who told him the adjuster was there and was going out to see him — that the adjuster would be around and pay him the money; that about a week or ten days later (more than ten days after the fire) the agents told him the company would not pay him anything because he did not have over $100 worth of goods in the store at the time of the fire. *Held*, that there was no evidence tending to prove a waiver of the condition in the policy, and that a nonsuit was properly granted.

2. An offer by the plaintiff, pending the motion for nonsuit, to show by his own testimony that he was induced not to furnish the sworn statement by what was said by the agents in their first two conversations above mentioned, was properly rejected, because nothing was said in those conversations which excused him from such obligation.

[3. Whether sec. 5, ch. 240, Laws of 1880, so limits the operation of sec. 1977, R. S., that a local agent of an insurance company cannot waive the rendering of a sworn statement of loss and bind the company thereby, is not determined.]

APPEAL from the Circuit Court for *La Crosse* County.

Action upon a policy issued by the defendant company to the plaintiff, insuring him for one year from January 18, 1881, against loss or damage by fire or lightning, to the amount of $1,000, on his stock of goods in a certain store therein described. The insured stock was destroyed by fire, July 19, 1881.

The policy required the plaintiff to render to the company, at its office in Madison, within ten days after the fire, a particular statement of the loss, signed and sworn to by the assured, containing all the information he has of the origin and circumstances of the fire, and stating also (among other things) the exact nature of his title to the insured property, the interest of other parties therein, and the cash value thereof. It is further provided in the policy that no action

thereon shall be maintainable against the company until after full compliance by the assured with all of the require-ments therein contained.

No statement of the loss, as required by the policy, was furnished to the company at Madison until February 1, 1882, at which time such a statement was forwarded to the company at that place by the ·attorneys of the plaintiff. The same was immediately returned to the attorney who sent it, by the secretary of the company, who stated, in a letter inclosed with such statement, that it came too late, and that, for that reason and sundry others, the company denied lia-·bility on the policy. Under date of February 3, 1882, the president of the company wrote to the same attorneys, concerning plaintiff's claim, as follows: " We have investigated the case, our adjuster having spent considerable· time on it. He does not believe that the company is liable either in law or equity for any damages whatever, and, from the facts presented, I fully concur with him. We are ready at all times to pay just and legal claims." The defendant, in its answer herein, pleads the failure to render such statement within the time required by the policy as a defense to the action.

The plaintiff claims that the obligation on his part to render such statement was waived by Peck & Norbeck, the local agents of the defendant company at La Crosse, who issued the policy. The testimony upon which alone such claim of waiver is predicated, is that of the plaintiff. This testimony is substantially stated in the brief of counsel for the plaintiff as follows:

" On Tuesday, the 20th of July, 1881, the plaintiff notified the defendant of the loss, by notifying its local agent at La Crosse, who told him that it was all right (meaning the loss); that the adjuster would be around there, and he would get his money; that the adjuster would pay him in a few days; that they would notify the company and the adjuster at

once, and the adjuster would come up there and pay him up.

"On the 26th of July, 1881, the plaintiff again called on the defendant's local agent at La Crosse, to see about getting his insurance, and was informed by him that the adjuster was there, and was going out to see him; that Lerdall, the adjuster, would be around, and pay him the money; that he was at La Crosse then, but had gone out of town a little; that the adjuster would come out to plaintiff's place, and that he would notify the plaintiff. The plaintiff hurried home that day to see him, but the adjuster did not come there.

"About a week or ten days afterwards, the plaintiff again called on the defendant's local agent at La Crosse to see about getting his insurance, and asked him if he had seen the adjuster that was to come out and pay him the money, and the agent told him he was in Minnesota and would be back soon; that he did not know whether he would come up and see the plaintiff or not, but thought he would. In the evening of the same day, the plaintiff saw the agent in the street, and asked him about the insurance, and if he hadn't heard from the adjuster, and then the agent told him the defendant was not going to pay the plaintiff anything, because he did not have over one hundred dollars' worth of goods in the store at the time of the fire. This was the first intimation the plaintiff received or knowledge given him that the defendant did not intend to pay him."

The plaintiff at the close of his testimony summed up the whole of the conversations as follows: "I understood Peck to be the agent of the company; he promised to write to the company for me. I don't know if Norbeck did it, or him. He said the man would come out to my place, and would straighten up with me — see me straightened up and figure up with me — straighten up; something like that he said — straighten up the case with me, he said. I don't re-

member if he said straighten up with me or pay me up, or anything of the kind. I don't remember it. . . . Peck said the man was going out to my place and straighten up with me; pay me up, or let me get my money; something like that."

On motion of defendant's counsel, made at the close of plaintiff's testimony, and after he had rested his case, the circuit court ordered a nonsuit, and afterwards denied a motion by plaintiff to vacate and set aside such nonsuit. Whereupon judgment for the defendant was entered, from which the plaintiff has appealed to this court.

For the appellant there was a brief by *Bleekman & Bloomingdale*, as attorneys, and *E. P. Vilas*, of counsel, and oral argument by *Mr. Bleekman* and *Mr. Vilas*. They argued, *inter alia*, that where a forfeiture of a policy is alleged on merely technical grounds, not going to the risk, the contract will be upheld if it can be without violating any principle of law. *Ripley v. Ætna Ins. Co.*, 29 Barb., 552; *Appleton Iron Co. v. British Am. Ass. Co.*, 46 Wis., 23. Preliminary proofs will be deemed to have been waived, if the conduct of the insurer was such as to induce delay, or to render their production useless, or to induce a belief that they would not be required. May on Ins., secs. 361, 468–9; Wood on Ins., sec. 421; *Union C. L. Ins. Co. v. Pottker*, 33 Ohio St., 459; *Underwood v. Farmers' Ins. Co.*, 57 N. Y., 500; *Mercantile Ins. Co. v. Holthaus*, 43 Mich., 423; *Aurora F. & M. Ins. Co. v. Kranich*, 36 id., 289; *Gans v. St. Paul F. & M. Ins. Co.*, 43 Wis., 108; *Killips v. Putnam Ins. Co.*, 28 id., 472; *McBride v. Republic Ins. Co.*, 30 id., 562; *O'Conner v. Hartford Ins. Co.*, 31 id., 160; *Palmer v. St. Paul F. & M. Ins. Co.*, 44 id., 201; *Badger v. Glens Falls Ins. Co.*, 49 id., 389. A distinct denial of liability and refusal to pay is a waiver. *Taylor v. Merchants' Ins. Co.*, 9 How., 390; *Graves v. Washington M. Ins. Co.*, 12 Allen, 391; *Norwich & N. Y. T. Co. v. W. M. Ins. Co.*, 34 Conn., 561; *Parker v.*

*Amazon Ins. Co.*, 34 Wis., 363; *Harriman v. Queen Ins. Co.*, 49 id., 71; *Sexton v. M. C. M. Ins. Co.*, 9 Barb., 191. It is settled in this state that an agent who is authorized to take risks and issue policies may waive by parol a condition in a policy issued by him; that such conditions may be waived by acts *in pais;* and that the construction to be put upon such acts of waiver is a question for the jury. May on Ins., secs. 126, 509; Wood on Ins., secs. 383, 391, and note to sec. 421; *Warner v. Peoria Ins. Co.*, 14 Wis., 318; *Miner v. Phœnix Ins. Co.*, 27 id., 693; *Killips v. Putnam Ins. Co.*, 28 id., 472; *Webster v. Phœnix Ins. Co.*, 36 id., 67; *Winans v. Allemania Ins. Co.*, 38 id., 342; *Roberts v. Continental Ins. Co.*, 41 id., 321; *N. W. Mut. Life Ins. Co. v. Germania Ins. Co.*, 40 id., 446; *Gans v. St. Paul F. & M. Ins. Co.*, 43 id., 108–112; *American Ins. Co. v. Gallatin*, 48 id., 36; *Schomer v. Hekla Ins. Co.*, 50 id., 575; *Knox v. Lycoming Ins. Co.*, id., 671; *Mercantile Ins. Co. v. Holthaus*, 43 Mich., 423.

For the respondent there was a brief signed by *J. H. Carpenter*, and the cause was argued orally by *C. W. Bunn* and *J. M. Olin.*

LYON, J. Under the terms and stipulations contained in the policy, the rendering of sworn proofs of loss to the defendant company at Madison within ten days after the insured property was burned (unless the same was waived by the company) is a condition precedent to the right of the plaintiff to recover. This proposition is not controverted by the learned counsel for the plaintiff. That such proofs were not so rendered is undisputed. If, therefore, the plaintiff is entitled to recover on the policy, it is because the company have, in some manner, excused him from rendering such proofs. The circuit court held, presumably, that there is no testimony in the case tending to show a waiver by the company of the condition in the policy requiring the plaintiff to render such proofs. The nonsuit can be sustained on no other

ground. Whether any such testimony was given on the trial is, therefore, the principal question to be determined on this appeal. The claim that the plaintiff was excused by the company from rendering sworn proofs of loss, is predicated entirely upon the plaintiff's testimony of four conversations with Mr. Peck, the defendant's local agent at La Crosse. One of these conversations was on July 20th, the day after the loss; another on July 26th, one week after the loss; and the others occurred a week or ten days after July 26th. It will be observed that the last two conversations were after the time had expired within which the proofs of loss were required by the policy to be rendered. The substance of these several conversations will be found in the foregoing statement of facts.

There is nothing in the testimony tending to show that in the conversations between the plaintiff and Peck the subject of rendering proofs of loss was mentioned or referred to, or that Peck had any knowledge that the same had not been, or were not intended to be, rendered by the plaintiff, and nothing was said to put Peck upon inquiry on the subject. Indeed, these conversations are entirely consistent with the theory that Peck expected the plaintiff to render such proofs, if he had not already done so, and there is not a word in either of them which could justify a belief on the part of plaintiff that he was thereby excused from performing the conditions required of him in the policy. Neither did Peck require the plaintiff to do, or omit to do, any act, the doing or omission of which would estop the defendant from asserting its right to have the proofs rendered within the stipulated time. The conversations on the part of Peck, as finally summed up by the plaintiff, amount to nothing more than an assurance by him that the company would properly discharge its duty to the plaintiff in the matter of the loss. The promise by Peck to notify the company of the loss was merely a promise to do what it was his duty to

do in any event.   It could not reasonably be inferred there-
from that such notice should take the place of, and excuse
the plaintiff from rendering, the required sworn statement
of the particulars of his loss.   The statement made by Peck
in the last conversation, to the effect that the company
would not pay the loss because there was not $100 worth of
goods in the store at the time of the fire, contains no ele-
ment of an estoppel, because it was made after the plaintiff
was in default, and it does not appear that it influenced, or
could have influenced, his action in respect to the loss in the
slightest degree.

Neither do the letters of February 2d and 3d, written by
the secretary and president of the defendant, respectively, to
the attorneys of the plaintiff, operate as a waiver of proofs
of loss.   The letter of the secretary expressly asserted a for-
feiture of the policy, because such proofs were not furnished
in time, and that of the president merely states that he con-
curs with the adjuster in the opinion that the company is
not liable, either in law or equity, to pay the loss.

This question of waiver has been very fully and carefully
considered by this court in several insurance cases which are
cited in the brief of counsel for appellant.   None of them
are applicable to the case made by the record before us.
This will be so readily seen by reference to them that it is
deemed quite unnecessary to point out more particularly the
inapplicability of the rule of those cases to the one here
presented.

We have considered the testimony upon the hypothesis
that Peck was the agent of the defendant company "to all
intents and purposes" (R. S., sec. 1977), and might bind the
company by any act or word which could operate as a
waiver of the sworn statement of loss required by the pol-
icy had the same been done or spoken by a principal officer
of the company.   An argument has been submitted by coun-
sel for the defendant, in which it is claimed that sec. 5, ch.

240, Laws of 1880, limits the operation of sec. 1977, R. S., and that while under the latter section a local agent might waive the rendering of a sworn statement of the loss, and bind the company thereby, under the act of 1880 he could not do so. It is not found necessary to decide the point.

Our conclusion is that there is no testimony tending to prove a waiver of plaintiff's obligation to render the sworn statement of his loss, as required by the terms of the policy, and hence that the nonsuit was properly ordered.

A single other alleged error remains to be considered. Pending the motion for a nonsuit, the plaintiff offered to prove by his own testimony that "he would have filed his proofs of loss with the company according to the terms of the policy before the expiration of the ten days mentioned in the policy, but for what Mr. Peck, the agent of the company at La Crosse, said to him on the first and second days he saw him, and he was induced not to file such proofs on account of what Mr. Peck said to him." An objection to the testimony so offered was sustained on the ground that the same, if received, would not tend to establish a cause of action in favor of the plaintiff. We think the ruling was correct. As we have already said, Mr. Peck said nothing to the plaintiff in either of those conversations which excused him from the obligation to render his proofs of loss, and he had no right to put any such construction upon what Mr. Peck said to him.

*By the Court.*— The judgment of the circuit court is affirmed.