### ALKER et al v. RHOADS et al.

(Supreme Court, Appellate Division, First Department. June 6, 1902.)

1. ACTION ON POLICY—AMENDMENT—MISDESCRIPTION OF DEFENDANT.

Under Code Civ. Proc. § 723, authorizing the amendment of any process or pleading by correcting a mistake in the name of a party, provided such amendment will not change the cause of action, where an action on an insurance policy executed by an attorney in fact was brought against the attorney individually, an amendment of the summons and complaint so as to change the action to one against defendant as attorney in fact was properly allowed.

2. REINSURANCE—LIMITATIONS.

Where a reinsurance policy consists of an ordinary fire policy, to which a rider is attached, containing the substantial part of the agreement for reinsurance, a provision in the ordinary policy form limiting the right of action for loss to one year after loss does not apply, but the six-years limitation applies, as in case of any other policy of reinsurance.[1]

---

[1] See Insurance, vol. 28, Cent. Dig. § 1823 [g].

3. SAME—DETERMINATION OF LOSS—MEANING OF "COMMISSIONS PAID."

Where a policy of reinsurance against loss which insured may sustain on certain policies in excess of 50 per cent. of the net premiums received by insured during the term of such policy provides that the "net premiums" should be determined by deducting from the gross premiums "commissions paid," the term "commissions paid" includes the entire compensation paid by insured to its attorneys in fact, and is not confined merely to commissions paid for business procured.

4. SAME—CONCURRENT INSURANCE—APPORTIONMENT.

A reinsurance policy against losses not exceeding $5,000 during a term from September 15, 1895, to January 1, 1896, after reciting the terms of the contract, etc., contained the clause, "$15,000, September 15, 1895, to January 1 1896, without right of cancellation by either party." A $10,000 loss accrued, and the first proof thereof, prepared by the person who formulated the reinsurance contract, stated that, "There being an implied agreement to carry a total insurance concurrent with your form of policy of $15,000, the adjustment is to be made as though such $15,000 insurance was in force," and that the insurer's proportion of the loss was, therefore, one-third. It further appeared that insured had taken out $10,000 additional reinsurance on the risk, though $5,000 of this had been allowed to lapse. The second proof of loss demanded $5,000, without apportionment. Held, that the policy contemplated reinsurance to the extent of $15,000, and the insurer was liable only in the proportion of $5,000 to $15,000; that is, for one-third of the loss.

Appeal from trial term, New York county.

Action by Alphonse H. Alker and others against Benjamin Rhoads, Jr., and others. From a judgment in favor of plaintiffs, defendants appeal. Modified and affirmed.

This action was brought by the plaintiffs, who compose the association known as New York & Boston Lloyd's, to recover upon a policy of reinsurance executed by the defendant, who is attorney in fact of the association known as People's Fire Lloyd's, on September 15, 1895, whereby it was agreed to indemnify the plaintiffs from the date of the policy to January 1, 1896, against any loss they might sustain on certain policies issued by them in excess of 50 per cent. of the net premiums received by them during the term of such policy to an amount not exceeding $5,000. The policy of reinsurance provided that such net premiums were to be determined by deducting from the gross premiums "commissions paid," return premiums upon policies canceled, and premiums upon reinsurance, and that "the underwriters hereon" should "make good to the underwriters at New York and Boston Lloyd's their proportion of such excess loss." Then follow the words, "$15,000, September 15, 1895, to January 1, 1896, without the right of cancellation by either party." Losses having occurred within the period, the plaintiffs gave notice thereof on January 3, 1896, and presented proof on February 11, 1896, that the amount of excess losses over 50 per cent. of net premiums was $10.578.94; stating: "There being an implied agreement to carry a total insurance concurrent with your form of policy of $15,000, the adjustment is to be made as though such $15,000 insurance were in force. Your proportion of such excess of loss therefore is one-third, or $3,526.31." Subsequently, on April 13, 1896, plaintiffs presented a proof of loss showing excess of losses over 50 per cent. of net premiums to be $10,695.57, with $10,000 insurance in force, of which the maximum of the People's Fire Lloyd's was $5,000, wherefore $5,000 was demanded. Such demand being refused, this action was brought to recover the same by service of summons and complaint on the defendant individually on November 13, 1896, and the supplemental amended summons and complaint were served on him as representing the People's Fire Lloyd's on February 10, 1899. The court found in favor of the plaintiffs for the full amount demanded, and from judgment so entered the defendant appeals.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

G. H. Crawford and Wm. P. Burr, for appellant.
Wm. B. Ellison, for respondents.

O'BRIEN, J. Three objections are urged against the validity of the judgment, the first being that the court never obtained jurisdiction of the defendant. This objection arose out of the fact that Benjamin T. Rhoads, Jr., was originally sued as an individual; but the plaintiffs, having, under decisions, ascertained the fact to be that an action must, in the first instance, be against the manager and attorney in fact, and not against the underwriters individually, moved to amend the summons and complaint at special term, which was granted, and the question presented is whether, under section 723 of the Code of Civil Procedure, the court had power to so amend the complaint. The decisions upon the extent to which the court's power may be exercised in granting such amendments are not uniform, and cannot be in all respects reconciled. That such power is not unlimited, we know; and the case of New York State Monitor Milk Pan Ass'n v. Remington Agricultural Works, 89 N. Y. 22, is one relied upon by the appellant as against the amendment here allowed. There the action was commenced against a corporation as sole defendant, and the amendment sought was the insertion of the names of other persons individually as defendants. It was held therein that the effect of such an amendment was to continue the action against other and different parties from those named, thus substituting a cause of action against other and different defendants. In the opinion rendered at the general term (25 Hun, 475) in that case we find all the authorities collated and discussed in which the question of the right of amendment has been presented. One of the cases cited is that of Tighe v. Pope, 16 Hun, 180, where an action was brought against the defendant describing her as administratrix, and asking judgment against her as such, and where the motion was to strike out the words "as administratrix," and the court held that it should be granted, remarking that, whether the amendment was allowed or not, the same person would be defendant. That case, upon its facts, is clearly distinguishable; recognizes, as do the other cases, the power, with its limitations, which we think permits the court to grant an amendment in ·the description or designation of the person who is sued; and that, although an entirely new and different person cannot be substituted, it is competent for the court, where there has been either a misdescription of the person or a mistake in the name, to permit the amendment. Applying that rule, therefore, to the case at bar, we think the court has undoubted power to grant this amendment, and the only benefit that the defendant could reap, if any, would be in the contention that the first action ended, and by the amendment it would be the commencement of a new action, as a defense to which the defendant might interpose the bar of the statute of limitations. Were this contention sustained, the defendant, we think, is in error in supposing that he would derive benefit therefrom. It may be conceded, for the sake of argument, that the amendment brought in an entirely new and different party, and that this would be controlling as to the time when the action was commenced, and the statute of limitations began to run.

The appellant's position is that the one-year statute of limitations provided in the policy of insurance applies, which requires the action to be brought within one year after the fire took place. Were the short statute of limitations to apply here, there would be some foundation for the argument to rest upon. We think, however, it does not apply. Although the policy in form is the ordinary one issued by a company to insure against loss by fire, containing provisions, as to time for filing proofs of loss, etc., it is conceded that this was not the ordinary policy insuring against loss by fire, but was a policy of reinsurance, and that the substantial part of the agreement was in the "rider" attached to the form of policy. It is to be construed, therefore, as the parties intended it should be, as a policy of reinsurance, and to a claim thereunder the one-year provision would not apply. In the case of Jackson v. Insurance Co., 99 N. Y. 124, 1 N. E. 539, the six-year statute of limitations was held to apply to reinsurance contracts, and not the clause in the policy limiting the right to commence an action upon the policy within the next twelve months after the fire.

The second question presented is whether the right principle was applied in determining "net premiums" under the contract, which involves the question whether the plaintiffs were justified in deducting the entire compensation allowed to their attorneys in fact, instead, as the plaintiffs insist, of limiting it, in the words of the policy, to "commissions paid" for business procured. To limit the words "commissions paid" merely to those paid to outside agents would be too narrow a construction. In our view, therefore, it was not improper in determining the "net premiums" to deduct the compensation allowed to the attorneys under their agency contract, thinking, as we do, that such payment was "commission paid."

The third question is whether or not the plaintiffs are coinsurers with the defendant on this risk by reason of an alleged agreement to maintain $15,000 insurance on it. This question arises upon the provision of the rider in the policy, which is in the following language: "$15,000, September 15, 1895, to January 1, 1896, without the right of cancellation by either party hereto." Unless we hold that there was no object intended in inserting that clause, or unless it is meaningless, the construction given to it by the defendant should prevail. In construing a contract, however, it must be assumed that the parties meant something by the language employed, and that there was some purpose to be effectuated by it. It is significant in this connection that upon the presentation of the first proof of loss, which was prepared by the person who formulated the rider in which this provision appeared, we find this statement: "There being an implied agreement to carry a total insurance concurrent with your form of policy of $15,000, the adjustment is to be made as though such $15,000 insurance were in force. Your proportion of such excess of loss, therefore, is one-third, or $3,526.31." That it was intended that there should be $15,000 of reinsurance obtained further appears from the fact that, in addition to the two actually taken out and existing for $5,000 each, there had been another policy for $5,000 taken out in a company the name of which was not given; and, although this was returned after it had been issued and before defendant's policy was written, it is

significant of what the parties understood to be the agreement.
Equally significant is the fact that in speaking of the $15,000 in the
clause from which we have quoted it is said that plaintiffs had "no
right of cancellation," which would seemingly indicate that they had
agreed to secure and maintain the full amount of $15,000. Here, if
the rule of construction is to be applied that it will be presumed that
the parties intended to express something by the language used, and
if the practical construction which the parties themselves have placed
upon the contract is to govern, then it seems to us that the view for
which the defendant contends should prevail in holding that it was the
intention to have reinsurance to the extent of $15,000, and that under
the defendant's policy of $5,000 it was to be responsible in the propor-
tion that the latter bore to the $15,000, viz., one-third of the loss.
For this alone, therefore, the plaintiffs are entitled to judgment.

The judgment as entered should accordingly be modified to that
extent, and, as so modified, affirmed, without costs. All concur.