NELLIE LOVE, Appellee, *vs.* THE MODERN WOODMEN OF AMERICA, Appellant.

*Opinion filed June 18, 1913.*

1. BENEFIT SOCIETIES—*local lodge is not the agent of the head lodge in all matters.* A local lodge authorized to receive and collect dues and send them to the head lodge is the agent of the head lodge for that purpose and its acts within the scope of the agency are binding upon the head lodge, but it is not a general agent, and acts beyond the scope of the agency do not bind the head lodge.

2. SAME—*requirement for making proofs of death is binding.* The. constitution, by-laws, application for membership and the benefit certificate together constitute the contract of insurance between the member and the society, and a provision of the certificate and by-laws that no action shall be maintained on the certificate until after proofs of death have been made and passed upon in the manner specified is binding upon the member.

3. SAME—*what is not a waiver of provision concerning proofs of death.* The fact that it is the duty of the clerk of a local lodge to furnish blanks for making proofs of death and forward them, when filled out, to the head lodge, does not give him any authority to pass upon the validity of a claim; and the further fact that he denied, absolutely, any liability of the society at the time he furnished blanks for making proofs of death, does not waive a provision of the by-laws and certificate requiring proofs of death to be furnished before any action should be brought on the certificate.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding.

TRUMAN PLANTZ, GEORGE G. PERRIN, and A. W. FULTON, for appellant.

KRETZINGER, ROONEY & KRETZINGER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, the Modern Woodmen of America, issued its benefit certificate, dated November 29, 1909, signed by C. W. Hawes, head clerk, to Nathan D. Love, a member of the local camp in Chicago, for $1000, payable on his death to his wife, the appellee, Nellie Love. Less than two months afterward he died, on January 15, 1910, and she brought this suit on the certificate in the municipal court of Chicago, stating her claim to be for $1000, as beneficiary. The certificate provided that no action should be maintained upon it until after proofs of death had been filed with the head clerk and passed upon by the board of directors. The by-laws contained a similar provision, and provided further that the proofs should be executed in the form prescribed by the board of directors and upon blanks furnished by the head clerk. The certificate also provided that it should be null and void if Love should within one year commit suicide or his death should result, directly or indirectly, from his intemperate use of intoxicating liquors. The appellant's affidavit of merits set up that the appellee had not made proofs of death nor filed the same with the head clerk and therefore the suit was brought before any right of action had accrued to her, and that Love committed suicide and his death resulted indirectly from the intemperate use of intoxicating liquor. There was a trial and

a verdict for the appellee for $1000. Judgment was entered on the verdict, and the Appellate Court for the First District affirmed the judgment and granted a certificate of importance.

Proofs of death, as required by the contract of insurance, were not furnished or sent to the head clerk or passed upon by the board of directors of the defendant. Notwithstanding the failure to comply with the contract the plaintiff claimed a right to maintain her action on the ground that the defendant had denied liability and therefore waived the proofs. William P. Dowd was clerk of the local camp of which Love was a member, and two or three days after the death of Love he went to the residence of the widow, filled out a preliminary notice of the death, and told her to come to his office in the Ashland block and he would have John Harris help her fill out the death proofs without any cost to her. Four or five days afterward the plaintiff went to Dowd's office, and he furnished her with blanks for the proofs and took her into the adjoining room of John Harris, an attorney and notary public, who solicited new members for the defendant. Dowd introduced her to Harris and requested him to assist her. Harris said he would help her fill out the papers and act as notary public and it would not cost her anything. She testified that Dowd told her, when she came to his office, that he was sorry for her trouble, but he knew there would not be any use and she would not get the insurance because her husband committed suicide, or, as she stated on cross-examination, he told her that if her husband had committed suicide she could not get anything on the certificate. She also testified that Harris told her he knew very well she would not get the insurance without she turned it over to a lawyer. Dowd denied that he made any such statement to the plaintiff as she testified to. Harris had no authority to do anything about the proofs and was not an agent for any purpose connected with the claim but merely assisted the plaintiff, as a notary,

to save expense to her, but he denied that he made the statements claimed and testified that while he was writing and filling out proofs he said it was questionable whether the claim would be allowed. The judgment of the Appellate Court settled the controverted question of fact, and it must be regarded as a fact that Dowd denied liability absolutely and without the qualification stated by plaintiff on cross-examination. The remaining facts as to proofs were not in controversy. Harris filled up part of the blanks, swore the plaintiff to one of them and advised her concerning others. She went to the coroner to have one of the blanks filled and then went to the undertaker to have another filled, and then took the proofs to her attorney and left them with him. The proofs were only partially completed and the suit was begun on March 2, 1910. In the evening of March 3 or the morning of March 4, the proofs, so far as they were made out, were left on the desk of Dowd by a boy, and on March 5 Dowd mailed them to the plaintiff, requesting her to have the forms for the officiating clergyman and attending physician filled out. He asked her to give the matter prompt attention so that he could forward the death proofs to the head office, at Rock Island. That was after the suit had been begun, and nothing further was done about the proofs.

The instruction of the court to the jury on the question of waiver of proofs of death was quite involved and not clear, but it advised the jury that if proofs of death were not filed with the head clerk and the plaintiff's claim submitted to the board of directors for action she could not recover, but if Dowd, as clerk of the local camp in Chicago, had the duty to furnish the blanks for the proofs to be filled out by the beneficiary and when they were returned it was his duty to furnish them to the head clerk, and he stated to the plaintiff that the defendant would not pay the claim because the deceased had committed suicide, then, in contemplation of law, Dowd, as clerk of the local camp, rep-

resented and acted as agent of the defendant, and what Dowd did and said amounted to a waiver on the part of the defendant of the provision that no suit should be commenced unless proofs of death were sent to the head clerk and the board of directors passed upon the proofs and the claim, and the verdict should be for the plaintiff unless the jury believed the insured committed suicide, in which case the verdict should be for the defendant.

The constitution and by-laws, the application for membership and the benefit certificate, together constituted the contract of insurance. (*Alexander* v. *Parker,* 144 Ill. 355; *Lehman* v. *Clark,* 174 id. 279.) The provision that plaintiff should furnish proofs of death, so that the defendant could investigate the claim and ascertain its liability, was binding. That view òf the law was taken by the court in instructing the jury and is not questioned. The hypothesis of fact stated in the instruction, that it was the duty of Dowd, as clerk of the local camp, to furnish blanks to be filled out by the beneficiary and when returned to him to furnish them to the head clerk, was proved, and the jury were instructed that if such was his duty he was authorized, in law, to waive proofs of death by denying liability. It is here contended that the instruction was right because the relation of the local camp to the head camp was that of agency. The law of agency applies to fraternal benefit associations just as it applies to other principals and their agents. It is true that a local camp is agent of the head camp as to some things, but it is not true that it is a general agent, authorized to do everything that the head camp or its officers may do. The subordinate lodge of a benefit association, authorized to receive or collect dues and transmit them to the association, is the agent of the association for that purpose, and its acts within the scope of the agency are binding on the association. So if a subordinate lodge, with full knowledge of a fact which would render a certificate void, continues to receive dues from a member, the

right to forfeit the certificate on account of that fact is waived. A subordinate lodge receiving dues and paying them over to the principal lodge necessarily treats the insurance as in force. The member pays his dues through the subordinate lodge, and if the agent has knowledge of a fact which would work a forfeiture of the certificate it should refuse to receive further dues. The receipt of a payment after an act which might constitute a forfeiture is a common method of waiving a forfeiture, and the knowledge of the agent is the knowledge of the principal. That rule applies where there is a right to suspend a member for failure to promptly pay his dues and where the local lodge accepts dues from a member in good health who is delinquent but has nothing to do to be re-instated except to pay his dues. (*Order of Foresters* v. *Schweitzer,* 171 Ill. 325; *Coverdale* v. *Royal Arcanum,* 193 id. 91; *Ancient Order of United Workmen* v. *Lachmann,* 199 id. 140; *Court of Honor* v. *Dinger,* 221 id. 176; *Jones* v. *Knights of Honor,* 236 id. 113.) In every such case the local lodge is acting within the scope of its agency and its acts are binding on the association. The rule is the same in the case of a regular insurance company, where the agent is fully authorized to act for the company in respect to proofs of loss or to ascertain and adjust the loss and his acts are within the scope of his agency. (*Dwelling House Ins. Co.* v. *Dowdall,* 159 Ill. 179; *Citizens' Ins. Co.* v. *Stoddard,* 197 id. 330.) It has never been held that an agent may bind his principal by acts not within the rule or beyond the scope of his agency.

Dowd was clerk of the local camp, and was authorized, as such, to receive and transmit dues and assessments, and his acts in respect to his agency would bind the defendant. He was also furnished with blanks for proofs of death, which he was to give to beneficiaries, and when filled out in compliance with the contract he was to send them to the head clerk. That was the extent of his authority, and he had no more right to deny liability than he would have had

to admit liability. He performed the acts which he was authorized to perform, so far as he was given an opportunity. The proofs were not made when suit was brought, and the blanks, partly completed, were left on his desk after the beginning of the suit. The court erred in informing the jury that Dowd's duty and authority to furnish blanks to beneficiaries, and to send them, when completed, to the head clerk, conferred upon him power to waive proofs of death by denying liability. Neither he nor the local camp had any authority to adjust the claim or determine its legality or decide whether the defendant would or would not pay it. On the admitted facts the suit was prematurely brought, and the judgments of the Appellate Court and municipal court are reversed.          *Judgment reversed.*