KEIL MOTOR COMPANY, a corporation of the State of Delaware, v. ROYAL INSURANCE COMPANY, LIMITED, OF LIVERPOOL, ENGLAND.

(*September* 22, 1933.)

HARRINGTON and REINHARDT, J. J., sitting.[1]

*W. Thomas Knowles* and *Samuel F. Keil* for plaintiff.

*James M. Malloy* for defendant.

Superior Court for New Castle County, Action of Assumpsit on insurance policy, No. 146, March Term, 1932.

---

[1] PENNEWILL, C. J., also sat in the argument of this case and agreed with the conclusion reached in this opinion, though his term had expired before it was filed.

HARRINGTON, J., delivering the opinion of the Court:

It appears from the pleadings that the automobile covered by the policy sued on was destroyed by fire on December 16, 1929; that the proof of loss was filed by the plaintiff

company some time after May 8, 1930, and that suit was brought against the defendant in this action on December 18, 1930.

The defendant's fourth and fifth pleas respectively allege as defenses to the plaintiff's action on the policy:

1. That its proof of loss was not filed with the defendant company within ten days after it became aware of the "loss or damage to said automobile, which impaired the interest of the assured" therein, as was provided by such policy.

2. That its action was not brought "within twelve months next after the happening of the loss," as was, also, provided by the policy.

The amended replication to the fourth plea alleges that the defendant waived the defense therein set forth:

1. By statements made by its agent to the plaintiff's representative, both before and after the expiration of the time prescribed by the policy for filing the proof of loss.

2. By the letter of the defendant company of May 8, 1930, a copy of which was sent by it to the plaintiff and which was, also, attached to that replication.

The defendant company demurred to this replication because:

1. It did not allege that the agent of the company therein referred to had the authority to waive any of the provisions of the policy.

2. That the statements in the letter of May 8, 1930, could not be construed to operate as a waiver of the condition of the policy relating to the filing of the plaintiff's proof of loss.

3. That in any event such letter could not amount to anything more than an implied waiver of the condition of

the policy, and that such a waiver, after the expiration of the time prescribed for filing the proof of loss, would not be a sufficient reply to the defendant's plea because to operate as a waiver it must necessarily be based on the elements of estoppel.

Both of the replications to the fifth plea are, also, based on the letter of May 8, 1930, which is referred to in and made a part of them. In these replications the plaintiff alleges, in substance, that the clause of the policy referred to in the defendant's plea cannot prevent the plaintiff from recovering on such policy because:

1. The defendant company led the plaintiff to believe that if suit was promptly docketed against Sarah M. Turner, the owner of the automobile destroyed, and that if the plaintiff was unable to collect anything from her, that its claim against the defendant would be promptly paid; that suit was docketed accordingly but due to necessary delays judgment was not rendered against the said Sarah M. Turner until December 5, 1930, and that it was not until shortly before December 18, 1930, when suit was brought on the policy, that the plaintiff learned that nothing could be collected on that judgment. The replication, in question, then further alleges that the year, "allowed by the insurance company was unreasonable in the light of the demands made by the defendant corporation."

2. That the defendant led the plaintiff to believe that no liability existed under the policy until final judgment had been rendered in the case of *Keil Motor Company v. Sarah M. Turner,* and that the letter of May 8, 1930, attached to that replication so states; that the defendant company, therefore, interpreted the word "loss" in the policy to mean loss as of the date when the plaintiff failed, by legal process, to collect from Sarah M. Turner; that the plaintiff accepted that interpretation of the defendant's contract, and upon being notified by the Sheriff of Kent County that Sarah M.

Turner had no goods and chattels, the plaintiff immediately brought suit on the policy.

This replication further alleges that "the word 'loss' is to be construed to mean loss after failure to collect from the purchaser of the car and the endorser of the note."

■■ Waiver has been defined by this court to be the intentional relinquishment of a known right, or such conduct as warrants an inference of such an intent (*Jones v. Savin,* 6 *Boyce* 68, 96 *A.* 756; *Id.,* 6 *Boyce* 180, 97 *A.* 591; *O'Neil v. Cooles,* 3 *W. W. Harr.* (33 *Del.*) 541, 140 *A.* 648) ; and, when properly alleged in the pleadings, if there is any evidence to support such an allegation, waiver is usually a question of fact for the jury to determine. *Jones v. Savin,* 6 *Boyce* 68, 96 *A.* 756; *Id.,* 6 *Boyce* 180, 97 *A.* 591; *O'Neil v. Cooles,* 3 *W. W. Harr.* (33 *Del.*) 541, 140 *A.* 648.

■ The clauses in the policy sued on, prescribing the time for filing the plaintiff's proof of loss and the time for bringing suit on such policy are both for the benefit of the insurance company and may, therefore, be waived by it, or by its duly authorized agent, when such waiver is properly alleged and proved. *Reed v. Continental Ins. Co.,* 6 *Penn.* 204, 65 *A.* 569; *Emory v. Ins. Co.,* 7 *Penn.* 102, 76 *A.* 230; *McKenney v. Diamond State Loan Ass'n,* 8 *Houst.* 557, 18 *A.* 905; 2 *May on Ins.,* § 488; *Cooley's Briefs on Ins.,* §§ 6848, 6858.

■ The defendant company claims that waiver is necessarily based on some element of estoppel and that there can, therefore, be no implied waiver of the prescribed time for filing the plaintiff's proof of loss after that time has expired.

The distinction between waiver and estoppel, especially in insurance cases, has not always been clearly drawn by the courts, but even conceding that the rule relied on by the defendant company has been applied by some courts (*Globe*

*Mut. L. Ins. Co. v. Wolff,* 95 *U. S.* 326, 24 *L. Ed.* 387; *Chandler v. John Hancock Mutual Life Ins. Co.,* 180 *Mo. App.* 394, 167 *S. W.* 1162; *Engebretson v. Hekla Fire Ins. Co.,* 58 *Wis.* 301, 17 *N. W.* 5; *Aronson v. Frankfort Accident & Plate Glass Ins. Co.,* 9 *Cal. App.* 473, 99 *P.* 537), it is apparent from *Jones v. Savin,* 6 *Boyce* 68, 96 *A.* 756; *Id.,* 6 *Boyce* 180, 97 *A.* 591, *supra,* that it does not apply here and that if the facts justify it, there may be a waiver of existing rights, even though no elements of estoppel are involved in the facts proved. *Reed v. Continental Ins. Co.,* 6 *Penn.* 204, 65 *A.* 569, cited by the defendant, is not inconsistent with this conclusion, though under the facts of that particular case some of the elements of estoppel may have existed.

■ It is not contended that the replication to the fourth plea is double (1 *Chitty's Pl.* 231, 640) and we, therefore, need not consider that question; but the defendant company does contend that where waiver by an agent is relied on in the pleadings his authority in that respect must, also, be alleged. Technically speaking, perhaps, it would be more accurate to allege that the principal, by its agent, in that behalf, had waived the provisions of the policy sued on. 3 *Chitty's Pl.* 117, 150. It would seem, however, that the allegation in the replication that the "defendant's agent" had waived the provision of the policy, in question, sufficiently complied with the rules of pleading. *Sherman v. Comstock,* 21 *Fed. Cas., page* 1275, *No.* 12,764, 2 *McLean* 19; *Partridge v. Badger,* 25 *Barb.* (*N. Y.*) 146; 2 *C. J.* 906.

This conclusion is not inconsistent with the cases cited by the defendant company (*Bush v. Westchester Fire Insurance Co.,* 63 *N. Y.* 531; *Burlington Ins. Co. v. Kennerly,* 60 *Ark.* 532, 31 *S. W.* 155; *Bowlin v. Hekla Fire Ins. Co.,* 36 *Minn.* 433, 31 *N. W.* 859; *Harrison v. Hartford Insurance Company* (*C. C.*), 59 *F.* 732; *Lohnes v. Insurance*

*Company of North America*, 121 *Mass.* 439; *Smith v. Niagara Fire Insurance Company*, 60 *Vt.* 682, 15 *A.* 353, 1 *L. R. A.* 216, 6 *Am. St. Rep.* 144; *Love v. Modern Woodmen of America*, 259 *Ill.* 102, 102 *N. E.* 183, 185, 6 *A. L. R.* 531), as they all involve questions as to the necessity of proof of agency and not questions of pleading.

In view of this conclusion, perhaps it may not be absolutely necessary to consider that part of the replication to the fourth plea that is based on the letter of May 8, 1930. That letter may, however, compose an important part of the plaintiff's case and we will, therefore, briefly consider the statements made therein by the defendant company. The letter in question is, in part, as follows:

"Policy A-295053—Keil Motor Company.

"We have been dealing with the Keil Motor Company for a number of years and the thing which impresses us most is that we never have any loss difficulties except on single interest contracts, and the present situation simply emphasizes the fact that the Keil Motor Company apparently do not know what the contract requires of them.

"In a sense single interest coverage has some of the aspects of a note guarantee in that it promises under certain conditions and because of certain damages to reimburse the Keil Motor Company for any depreciation in the value of notes.

"Now in the case of the Sarah Turner loss, which is a good example, we have nothing in our file to indicate definitely whether or not we have a loss before us. \* \* \*

"If you will look at the form that is attached to the single interest policy covering the notes of the car purchased by Sarah Turner, \* \* \* you will notice that it is incumbent on the Keil Motor Company to advise us in writing of the occurrence of a loss which they believe impairs or will impair their interest in the automobile, and then within ten days file with us a signed, sworn and itemized written statement showing the dates and amounts of the purchase price notes and setting forth all the facts concerning the loss or damage. The facts called for would include the number of their notes, a statement as to the unpaid notes not over thirty days overdue and a complete statement as to the 'Exhaustive attempt' by the Keil Motor Company to secure payment of these notes from the purchaser.

"There is nothing in our file to indicate what attempts at recovery have been made, \* \* \* On May 2nd the attorneys for the Keil Motor Company made a statement that Mrs. Turner was judgment proof, but we still insist that the policy conditions have not been complied with. While we have had no intention or desire to take an arbitrary stand over this or any loss, it being our constant endeavor to show cooperation and a reasonable attitude, we believe that the

Keil Motor Company and their attorneys, if this is properly explained to them, will realize that we are being asked to pay claims on which we have no evidence of liability or proper information.

"This contract is an ultimate loss contract and clearly reads to the effect that we are not expected to pay until all other avenues are closed to the Keil Motor Company and until there are no other means of securing payment under their notes. If we were to pay the claims the way the Keil Motor Company apparently believe we should, we can assure you that our rate schedules would be materially altered. We do not see how any transactions under these one interest contracts can proceed in a businesslike way unless both parties fully understand what the conditions are and comply with them fully and promptly.

"Other cases are before us and the same conditions exist. If the Keil Motor Company will only give the 'Royal' the proper and necessary information on these and future cases there will be no occasion for complaint. We want to be helpful in all our relations with the Keil Motor Company but cannot pay claims not properly supported by the necessary information.

"Yours truly, · Loss Supt."

The letter, in question, is perhaps not free from ambiguity, but it does not in positive language repudiate the plaintiff's claim. Treating it as a part of the replication to the fourth plea, when the statements in it are read in connection with the other allegations of that replication, we think that a waiver of the defendant company of the agreed time for filing the plaintiff's proofs of loss is, also, sufficiently alleged.

The printed policy, to which the typewritten rider is attached, is in the usual form of an automobile policy and, among other things, provides:

That the defendant company "In Consideration of the Premium Hereinafter Mentioned, Does Insure The Assured, named herein, for the term herein specified, to an amount not exceeding the actual cash value of the property at the time any loss or damage occurs, nor, in any event, the limits of liability, if any, herein specified, against direct loss or damage from the perils specifically insured against herein to the automobile, herein described, and the equipment usually attached thereto, only while within the limits of

the United States * * * and Canada, including while on coastwise steamers between ports within said limits."

It, also, among other things, provides:

"This insurance is against only such and so many of the Perils named in the Schedule below as are indicated by the specific premium in writing, set opposite thereto. The limit of this Company's liability against each of such Perils shall be as stated in the general condition of this policy, not exceeding, however, the limits stated in said schedules."

The perils specifically referred to in the Schedule and opposite which the premiums and limits of liability are set out, are:

1. Fire, lightning and transportation; the limit of liability being restricted to $814.

2. Theft, robbery and pilferage.

3. Collision or upset. This clause, however, limits the plaintiff's recovery to actual cash value, less "single interest deduction from each claim."

4. Property damage.

After likewise providing in another part of it that the liability of the defendant company "for loss or damage to the automobile described therein shall not exceed the actual cash value thereof at the time any loss or damage occurs," the printed part of the policy, also, provides:

1. For immediate written notice in the event of "loss or damage," provided such notice is not prohibited by the laws of the State where the policy is issued and for proofs of loss "within sixty (60) days after loss or damage."

2. That "no suit or action on this policy, or for the recovery of any claim hereunder, shall be sustainable * * * unless the assured shall have fully complied with all the foregoing requirements, nor unless commenced within twelve (12) months next after the happening of the loss; * * *"

The typewritten rider attached to the printed policy, also, in part, provides:

1. "The policy to which this endorsement is attached covers only the interest of Keil Motor Company, and/or the holders of the purchase price notes obtained by endorsement from the assured."

2. "The Company's liability shall not exceed the amount of actual loss or damage caused by the perils insured against, nor shall the Company be liable in any case for an amount exceeding the amount of unpaid installments of the purchase price of the automobile insured hereunder   *   *   *   which are not more than Thirty (30) days overdue on the date of loss or damage."

3. The Company shall not be liable until as a result of "loss by perils insured against the note or notes shall have become due and remain unpaid after an exhaustive attempt on the part of the assured and/or the Holder or Holders of such notes, to collect the same   *   *   *."

4. This endorsement shall not be construed to cover loss or damage to the assured by abandonment of the automobile or failure of the purchaser to fulfill his contract obligation.

5. "The assured shall, upon becoming aware of loss or damage to said automobile, which impairs the interest of the assured in said automobile, forthwith give written notice to the Company or Agent, who countersigned this policy, and within Ten (10) days thereafter file with the Company a signed, sworn and itemized written statement showing the dates and amounts of all purchase price notes given by the purchaser and set forth all facts covering such loss or damage, and date thereof, and the last known address of the purchaser."

6. "Upon payment of any loss hereunder, the Assured

shall, if so requested by the Company, assign and deliver to the Company, any and/or all Conditional Sale Contracts, Notes, Mortgages, or Lease Contracts, covering the automobile which may be subject to such claim, and the Company shall be subrogated to all the rights of the Assured thereunder * * *."

7. Any settlement made by or for the Assured with, or on account of the purchaser, for any loss claim under this endorsement, without the written consent of the Company, shall render this policy null and void.

8. It is understood and agreed that this insurance shall be considered as excess insurance where any specific insurance exists in the name of the Assured on any of the property hereby insured, or where specific insurance has been taken out in the name of others for the benefit of the Assured, and this insurance shall not apply nor contribute to the payment of any loss until all such specific insurance shall have been exhausted.

9. Coverage under this policy shall cease immediately upon the repossession by the Assured of the motor vehicle described hereunder.

10. This endorsement is subject to all the conditions and provisions in the policy to which it is attached, and of which it forms a part, not in conflict with the provisions hereof, and shall become void upon the cancellation thereof.

11. It is understood that the purchaser of this car is Sarah M. Turner.

12. Attached to and forming part of Policy No. 295,-053 of the Royal Insurance Company, Limited, of Liverpool, England.

The rider, therefore, is by express agreement made subject to all of the conditions and provisions of the printed part of the policy, to which it is attached, which are not

in conflict with it. By reason of that fact, one of the important questions for us to determine is whether the plaintiff's right of action is barred by the clause in that part of it which provides that no action can be brought on it "unless brought within Twelve (12) months next after the happening of the loss."

It is apparent from the context that the words "happening of the loss," as used in the printed part of the policy, referred to the time when the fire took place. Based on the second replication to the fifth plea, the defendant contends that when these words are read in connection with the provisions of the rider, they necessarily mean when the loss to such plaintiff shall be ascertained; but we find nothing in the policy, considered as a whole, to indicate that such a meaning was intended. In fact, this contention is clearly inconsistent with the language of both paragraphs 2 and 5 of the rider.

The plaintiff, also, contends, however, that the clause in the printed part of the policy, limiting the time when suit must be brought, is inconsistent with the provisions of the typewritten rider attached thereto, and, therefore, does not compose a part of the contract between the parties. The attorney for the defendant company admits that that question can be raised under the first replication to the fifth plea, and it is, therefore, unnecessary for us to specifically consider the allegations of that replication.

Fire is clearly one of the perils against which the printed part of the policy, standing alone, insured the Turner automobile, but the rider attached thereto materially limits that part of the defendant's contract.

It is apparent from the provisions above referred to that it not only contains a somewhat different provision for notice and proof of loss, but also provides that the policy shall cover "only the interest" of the plaintiff company in that automobile, or in the purchase price notes taken there-

for and limits recovery in any case to the amount of the "unpaid installments of the purchase price" of such automobile, "which are not more than thirty (30) days overdue on date of loss or damage." It also expressly provides that "the company shall not be liable until, as a result of loss by perils insured against, the note or notes shall have become due and remain unpaid after an exhaustive attempt on the part of the assured, * * * to collect the same * * *."

That the rider expressly makes the contract between the parties what may be termed an ultimate loss or guaranty contract is, therefore, clear. How much time the making of an "exhaustive attempt" to collect the Sarah M. Turner notes would require would necessarily depend on the facts, but we cannot say that a reasonable compliance with that provision might, under no circumstances, require more than twelve months.

In this connection, the author of *May on Insurance, Vol.* 2, § 487, says:

"When other conditions are such that a reasonable compliance with them is inconsistent with a compliance with a condition requiring suit to be brought within a specific time, the latter will not be allowed to defeat a recovery."

See, also, 7 *Cooley's Briefs on Insurance,* § 6810; *Dwelling House Ins. Co. v. Kansas Loan & Trust Co.,* 5 *Kan. App.* 137, 48 *P.* 891; *Stout v. City Fire Ins. Co., etc.,* 12 *Iowa (Withrow)* 371, 79 *Am. Dec.* 539; *Martin v. State Ins. Co.,* 44 *N. J. Law* 485, 43 *Am. Rep.* 397.

In *Dwelling House Ins. Co. v. Kansas Loan & Trust Co.,* 5 *Kan. App.* 137, 48 *P.* 891, *supra,* suit was brought on a policy of insurance which had been transferred as collateral security for a mortgage. The policy provided that no action could be brought thereon unless brought within six months after the loss occurred. It, also, provided that where a policy was issued upon the interest of a mortgagee, or was held as collateral security, that the assured could

not recover on it until he should have collected such portion of the debt as could be collected out of the primary security.

The court held that the two clauses were inconsistent and that the limitation clause, therefore, could not be regarded as composing a part of the contract.

The same general principle has, also, been very generally applied in actions on reinsurance contracts drawn by attaching riders to printed policies which were intended to cover other kinds of insurance and containing clauses limiting the time for bringing suit. *Home Ins. Co. v. Victoria-Montreal Fire Ins. Co.* [1907], *App. Cas.* 59, 7 *Ann. Cas.* 35; *Faneuil Hall Ins. Co. v. Liverpool, etc., Ins. Co.,* 153 *Mass.* 63, 26 *N. E.* 244, 10 *L. R. A.* 423; *Stout v. City Fire Ins. Co.,* 12 *Iowa* 371, 79 *Am. Dec.* 539; *Royal Ins. Co. v. Vanderbilt Ins. Co.,* 102 *Tenn.* 264, 52 *S. W.* 168; *Eagle Ins. Co. v. Lafayette Ins. Co.,* 9 *Ind.* 443.

See, also, *Jackson v. St. P. F. & M. Ins. Co.,* 99 *N. Y.* 130, 1 *N. E.* 539; *Alker v. Rhoads,* 73 *App. Div.* 158, 76 *N. Y. S.* 808.

Our conclusion, therefore, is that the limitation clause in the original printed policy is inconsistent with the terms of the rider, and that by reason of that fact such clause forms no part of the contract between the parties.

For the reasons above given, the demurrers to the amended replication to the fourth plea and to the first replication to the fifth plea are overruled. The demurrer to the second replication to the fifth plea is, however, sustained.