Jeff. D. McPike *v.* The Western Assurance Company.

1. **Fire Insurance.** *Proof of loss. Waiver.*
   A condition in a policy of fire insurance as to making proof of loss, being for the insurance company's benefit, may be waived expressly or by implication; and if the company, through its agents, so acts as to induce the assured reasonably to believe that it will not require the proof, it is estopped afterward to insist on the condition.

2. **Same.** *Adjuster. Examination of assured.*
   If the company's adjuster, returning from the scene of the fire, meets the agent of the assured, and inviting him "to fix up about this loss," subjects him, in the insurance office, to a private examination under oath, provided for in the policy, the jury must decide whether the agent is correct when he testifies that this, and the fact that another loss so "fixed up" by this adjuster had been paid, induced him to believe that nothing more was required. *Insurance Companies* v. *Sorsby,* 60 Miss. 302, distinguished.

3. **Same.** *Instructions. Burden of proof.*
   It is error in such a case to instruct the jury to find for the defendant; but the burden of proof is upon the plaintiff to establish that his agent believed that the defendant waived the proof of loss, and that the attendant circumstances warranted this belief.

4. **Same.** *Denial of liability.*
   If the adjuster tells the attorney of the insured that the company will not pay the loss because of violation of its conditions and suspicious circumstances attending the fire, this is a waiver of proof of loss.

5. **Same.** *Time of making proof. Waiver.*
   A stipulation that the proof of loss shall be furnished "as soon after as possible," means within a reasonable time; two months after the fire is unreasonable, and the assured cannot claim a waiver by reason of such a denial of liability then made, without a satisfactory explanation of his delay.

Appeal from the Circuit Court of Warren County.

Hon. Warren Cowan, Judge.

This action was on a policy of insurance filed with the declaration, which averred, only in general terms, that "all notices and proofs required" had been made. The appellee pleaded *non assumpsit*

only, and gave notice at great length that evidence would be offered to show that the house was not occupied by tenants, as represented when insured, and that when burned it had been vacant for months, but this notice contained no allusion to proof of loss.

At the trial the plaintiff put the policy in evidence.    It is in the usual form and payable sixty days after the proofs of loss required by the company shall have been made by the assured, and received, and the loss shall have been ascertained and proved in accordance with the provisions of the policy, and a part of one group of its stipulations is as follows :—

"8. Persons sustaining loss or damages by fire shall forthwith give notice of said loss to the company, and, as soon after as possible, render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving copies of the written portion of all policies thereon, also the actual cash value of the property and their interest therein, for what purpose and by whom the building insured, or containing the property insured, and the several parts thereof, were used at the time of the loss, when and how the fire originated, and shall also produce a certificate under the hand and seal of a magistrate or notary public (nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the assured) stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount which such magistrate or notary public shall certify.  The assured shall, if required, submit to an examination or examinations under oath, by any person appointed by the company, and subscribe thereto, when the same is reduced to writing."

The plaintiff then introduced T. L. Morrow, who testified that he was the plaintiff's general agent, and effected this insurance and paid the premiums, and that during the period of the risk the house burned, being worth at the time more than the face of the policy ; that he was absent when the fire occurred and did not hear of it until some time after, when he went to Vicksburg and met W. M. Gillespie, the company's adjuster, who requested him to go to the office of W. M. Chamberlin, local agent of the company, to fix up

about this loss; that the witness went there and Gillespie wrote out the proofs and the witness signed and swore to them and left them with him.

Here the defendant's counsel objected to any oral evidence being received as to the writings; whereupon, the counsel for the plaintiff demanded that the defendant produce said proofs of loss, and counsel for the defendant then produced and handed to the plaintiff's counsel the written statement as to the loss, signed and sworn to before a magistrate by the witness, T. L. Morrow, and which is described in the opinion of the court. After Morrow testified that the signature to this examination was his, and the defendant admitted that the magistrate's certificate was authentic, the paper was read to the jury without objection.

The witness, Morrow, continued that, after they reached Chamberlin's office, the adjuster took this paper, and began asking questions, and writing them down with the answers as the witness replied; that when he concluded, the adjuster asked him to go before a magistrate and swear to his answers, and that after consulting his lawyer he complied with this request; that this was all the proof he made, as it was all that Gillespie asked, and he supposed that it was right; that this adjuster knew all about the matter, and he left it to him, and thought this was proper, as Gillespie had fixed up the papers for him, a short time before, in the same way, for another loss, which was paid without objection; that the adjuster said nothing to indicate that he would not make up the proof of loss in this case as he had done in the other, and Morrow supposed that this paper was all he wanted.

One of the plaintiff's attorneys of record testified that he was general attorney for the plaintiff, and shortly after the fire, W. M. Chamberlin, the insurance agent, told him that the company had received no notice in writing of the loss; that the witness informed H. C. McPike, who was the plaintiff's attorney in fact under a written power to transact all his business, and at this agent's request he wrote a letter of notification to the insurance agent, Chamberlin; and this letter was then produced by the defendant on demand of the plaintiff, who read it in evidence.

This witness proceeded to state that four or five weeks after Gillespie took Morrow's statement, he asked this adjuster when the company would settle, and Gillespie replied that the company would not pay unless compelled to do so by suit, and when the witness asked him : " Why ?" he said : " Because the conditions of the policy have been violated and there are suspicious circumstances surrounding the fire." He added that the adjuster did not mention the proofs at all ; that if he had, this witness would have made them, although he was not employed to make the proofs, for he was attorney generally for both Morrow and the plaintiff.

This was all the evidence, and the defendant's attorney moved to exclude it from the jury because there was no preliminary proof of loss. The court sustained the motion, and then charged the jury to find for the defendant. After verdict in accordance with this instruction, the plaintiff moved for a new trial upon the grounds that he was surprised by the contents of the paper produced in compliance with his notice asking for the proof of loss, and that the court erred in sustaining the motion to exclude and in granting the instruction. The motion for a new trial was overruled, and the verdict and judgment remained for the appellee.

*M. Marshall*, for the appellant, argued orally and filed a brief. The evidence tended to show a waiver of the preliminary proof of loss ; and nothing more is required to overcome a motion to exclude, which is in the nature of a demurrer to evidence. *Swan* v. *Liverpool Ins. Co.*, 52 Miss. 704. It is plain that Morrow was misled, and thrown off his guard as to the preliminary proof. He was not told that anything less was being taken, or that the formal proof would be required. Preliminary proof is intended for the insurers' satisfaction only, and is waived by any conduct which leads the insured to believe that the company is satisfied. Flanders on Fire Insurance 529 ; May on Insurance, § 468. Denial of liability on other grounds is a waiver of the proof. May on Insurance, § 469. It is equivalent to a declaration that the insurer will not pay though the proof should be furnished. *Planters' Ins. Co.* v. *Comfort*, 50 Miss. 662 ; Sansum's Law of Insurance 1105, 1112. Objection cannot be first made at the trial that preliminary proof

has not been furnished. *Swan* v. *Liverpool Ins. Co.*, 52 Miss. 704. Evidence tending to prove a waiver was offered, and the question of fact should have been submitted to the jury. *Noonan* v. *Hartford Fire Ins. Co.*, 21 Mo. 81 ; *Charleston Ins. Co.* v. *Neve*, 2 McMull. 237 ; Flanders on Fire Insurance 531, 532.

*Shelton & Crutcher*, for the appellee.

Waiver is relied on by the appellant, and he places this on two grounds, the adjuster's examination of Morrow, and his conversation with the attorney. Unless a man of ordinary intelligence would have regarded these as waivers, the adjuster's acts and words do not bind the company as such. *Beatty* v. *Lycoming Mut. Ins. Co.*, 66 Penn. St. 9. Examining Morrow was no waiver. This was a right of the company under its policy, and was also its duty. *Insurance Companies* v. *Sorsby*, 60 Miss. 302. Gillespie's acts and his interview with Morrow were not calculated to mislead a man of ordinary prudence. *Mueller* v. *South Side Fire Ins. Co.*, 87 Penn. St. 399. The conversation with the lawyer was too late to operate as a waiver. Preliminary proof of loss could not then be made. Stipulating for proof as soon as possible after the fire is to enable the company to investigate the loss, and this cannot be waived after a reasonable time for compliance by the assured has elapsed without action on his part. *Farmers' Fire Ins. Co.* v. *Mispelhorn*, 50 Md. 180. No declaration made so late could affect the company. It was right to exclude the case from the jury, for there was no disputed fact.

*S. M. Shelton*, on the same side, argued orally.

*M. Marshall*, in reply, contended that Gillespie's conduct and words amounted to a waiver, and that at all events this question should have gone to the jury. *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527 ; *Farmers' Mut. Fire. Ins. Co.* v. *Moyer*, 97 Penn. St. 441. His conduct, argued counsel, was calculated to throw the assured off his guard. *Rokes* v. *Amazon Ins. Co.*, 51 Md. 512 ; *Williams* v. *Hartford Ins. Co.*, 54 Cal. 442. Examination of the assured and denial of liability is a waiver of proof. *Badger* v. *Phœnix Ins. Co.*, 49 Wis. 396 ; *Home Ins. Co.* v. *Myer*, 93 Ill. 271. Proof is waived by repudiating liability on the con-

tract of insurance.   *Bennett* v. *Maryland Fire Ins. Co.*, 14 Blatchf. 422 ; *Portsmouth Ins. Co.* v. *Reynolds*, 32 Gratt. 613.

CHALMERS, J., delivered the opinion of the court.

It is admitted that no proof of loss was ever made in this case by the insured, but it is insisted that there was a waiver of it by the insurer, or, what amounts in effect to the same thing, that the acts of the insurer by its agents were of such a character as to induce a reasonable belief upon the part of the insured or his agent that the necessity of making proof of loss was waived.   Gillespie, the adjuster of the company, went to the scene of the fire for the purpose of investigating the circumstances and adjusting the loss, but found no one on the premises.   Returning through Vicksburg, he encountered Morrow, the agent of the assured, and asked him to go to Chamberlin's office and " fix up about this loss."   Morrow accepted this invitation, went with him to the place named, and there submitted himself to a long examination, his answers to all the questions being written down by Gillespie.   After the examination ceased, Morrow, by direction, took the paper before a magistrate, swore to its correctness, appended his signature to it, and returned it to Gillespie.   This examination embraced nearly all the facts which, according to the specifications of the policy, were required to be embraced in a formal proof of loss.   Gillespie probably understood that he was only engaged in completing his own investigations as adjuster, and that what he was doing had no reference to the required proofs of loss, but Morrow testifies that he thought that what he had done constituted all that his principal or himself was required to do, and that he was led thus to think both by Gillespie's invitation, to go and " fix up about this loss," and by the fact that a short time before Gillespie had in this way " fixed up " a loss for him, which had been paid without objection. It is settled by the case of *Insurance Companies* v. *Sorsby*, 60 Miss. 302, that the mere sending of an adjuster to the scene of a fire and a full investigation by him constitutes no waiver of proof of loss, and as remarked, it is probable that the adjuster did not intend any waiver here, but that is not the question.   The

question is whether the agent of the insured, as a man of ordinary intelligence but unlearned in the technicalities of insurance, had anything to warrant him in believing that he had done all that the company would require. The condition as to making proof of loss was wholly for the benefit of the insurers, and not only might they waive it either expressly or impliedly, but if they so acted as to induce the assured reasonably to believe that they would not insist upon it they will be estopped afterward from insisting upon it. Wood on Fire Insurance, § 419, and cases cited.

The court below thought that there was nothing in what transpired that tended to show that Morrow was misled, or could fairly claim that he was, and therefore instructed the jury to find for defendants. We think this was error. It seems to us that the question, as being one not of law, but rather of fact, should have been submitted to the jury. We do not decide that Morrow was misled, nor that, as a man of ordinary intelligence, he can fairly claim that he was, but because we cannot say that he clearly was not misled or ought not to have been, and because we think it a proper subject for the jury to pass upon, we think it should have been submitted to them. It is for them to say whether in fact he did believe that the defendants had waived the proof of loss and whether the attendant circumstances warranted him in so believing. The burden of establishing both propositions is upon the plaintiff.

The adjuster four or five weeks after the interview with Morrow informed the attorney of the insured that the company did not intend to pay the loss, for the reason that its conditions had been violated and because there were suspicious circumstances attending the fire. If this statement had been made within the time during which the assured could have made his proofs of loss it would have been a clear waiver of all objections to the failure to present them, it being well settled that a denial of liability on other grounds is a waiver, but this of course is only true where the time for making the proof has not elapsed; since if the party has already lost all rights under the policy by his *laches* in this respect he cannot be affected by the subsequent denial of liability. Wood on Fire Insurance, § 419, and cases cited.

The policy in this case stipulated that proof of loss should be furnished "as soon after as possible," which means within a reasonable time. The denial of liability to the attorney occurred more than two months after the fire. In the absence of a more satisfactory explanation of the delay than is furnished by the present record, we think that the delay was unreasonable and that the assured cannot claim a waiver by reason of such denial.

We reverse the case because the court declined to allow the jury to pass upon the question of waiver in view of what passed between the adjuster and Morrow. We cannot say that it clearly appears that the latter was not misled and that a finding that he was and had a right to be, would have been so manifestly wrong that it would have been the duty of the court to have set it aside. *Swan* v. *Liverpool Insurance Co.*, 52 Miss. 704; *Whitney* v. *Cook*, 53 Miss. 551; *Carson* v. *Leathers*, 57 Miss. 650; *Chicago Railroad Co.* v. *Doyle*, 60 Miss. 977.

*Reversed and remanded.*