UNITED STATES MERCHANTS AND SHIPPERS INSURANCE COMPANY, Appellant, *v.* MORRIS KLIPPER, Respondent.

First Department, February 14, 1930.

*Paul D. Compton* of counsel [*Single & Single*, attorneys], for the appellant.

*Harold R. Zeamans* of counsel [*Harry Kirshbaum*, attorney], for the respondent.

PROSKAUER, J.  The plaintiff sues to rescind for fraudulent misrepresentation an insurance policy known as a "Jewelers' Block Policy" issued by it to the defendant, under the terms of which it insured the defendant against loss sustained by theft and other causes.  The defendant set up a counterclaim for a loss it claimed to have sustained and has recovered judgment thereon.  The plaintiff's complaint was dismissed on the merits.

Under the peculiar facts of this case we think the plaintiff should have had judgment directing a cancellation of the policy.  In the written application for the policy the insured, specifically answered in the negative the question, "Have Lloyd's or any insurer ever cancelled or refused to issue or to continue any insurance for you?"

The insured had been engaged in business as president and majority stockholder of a corporation known as Klipper & Klipper, Inc. About January 1, 1928, he severed his relations with that company and went in business under his own name. Soon thereafter his insurance broker asked Mr. Boylan, the New York manager of the St. Paul Fire and Marine Insurance Company, if he would be interested in issuing a policy for the defendant. Mr. Boylan "asked him to please not submit an application to me, as I had already declined the firm of Klipper & Klipper, of which this man was president, and it was quite useless for me to pass it along to the company, and I suggested that he offer it elsewhere." Even if we were to assume that this inquiry did not constitute a refusal to issue insurance, there is none the less ample evidence that the defendant was guilty of fraudulent misrepresentation in his denial in the written application for the policy in suit that any insurer had ever refused to issue insurance to him.

If the reasonable interpretation of the whole written application justified plaintiff in believing that this answer referred to Klipper & Klipper, Inc., as well as to the defendant personally, there was a fraudulent misrepresentation, for it is conceded that formal applications in writing for the issuance of insurance had been refused several times to Klipper & Klipper, Inc. An examination of the application convinces us that it can bear no other interpretation. Morris Klipper had been in business individually for only a period of a few months. In answer to the question, " Have you ever changed your name? " he stated, " Previously Klipper & Klipper, Inc.," thus plainly indicating that he regarded the business conducted for a few months by himself personally only as a continuation of the business of Klipper & Klipper, Inc. In answer to the question, " How long have you carried on business? " he stated " 26 years," and he admits that for seven years he did not carry on business as an individual, but acted as president of Klipper & Klipper, Inc. He was asked, " What was the exact amount of your previous merchandise inventory taken on 1/1/26? " and he answered, " $32,871.36." This was the inventory of Klipper & Klipper, Inc., and not of Morris Klipper. He gave details in the application of four previous losses under policies occurring between 1923 and 1927. All of these losses were sustained by Klipper & Klipper, Inc., and not by Klipper individually. In making up his claim the defendant used the books and stock cards of Klipper & Klipper, Inc., as costs, and not the inventory cost figures shown on his own inventory. We cannot escape the conclusion that the defendant intended to make his answers cover the record of Klipper & Klipper, Inc., as the predecessor or *alter ego*

of himself.  Indeed, as stated by him under the question, " Have you ever changed your name? " he considered his business substantially as identical with that of Klipper & Klipper, Inc.  No insurance company could reasonably have understood it in any other way and the company was certainly misled into the belief that no application for insurance had ever been refused either to Morris Klipper or to Klipper & Klipper, Inc., of which he had been president and majority stockholder.

The defendant claims, however, that the plaintiff has by its conduct lost its right to rescission.  Shortly after the loss the plaintiff wrote under date of May 17, 1928, electing to cancel the policy for the fraudulent misrepresentation as to refusal of previous insurance and returning the $500 premium and specifically reserving all its other rights and defenses.  The defendant refused to receive the $500, whereupon the plaintiff wrote canceling the policy under its terms for the remainder of the term after May 23, 1928, inclosing a *pro rata* remission of premium and stating, " Please understand that this letter is written without prejudice to our previous position, of which we advised you that the policy never went into force and effect, but was void from its date. We also do not waive hereby any rights or defenses which the company may have under the terms, provisions and conditions of the policy."  The defendant urges that this was an effectual cancellation by the plaintiff of its previous rescission, though the letter states in specific words that it is not.  The authorities cited by the defendant are all cases where, after an attempted rescission, the party accepted a benefit under the contract.  It would be a strained logic that would place such an interpretation, however, upon this correspondence.  The plaintiff said in effect that the policy was void *in toto* for fraud.  The defendant refused to acquiesce in this position.  The plaintiff then said: " We maintain our original position that the policy is void *in toto* for fraud, but in order that there may be no question as to future risks, we certainly cancel it for the balance of the term."  There was no proof that the defendant changed its position in any way to its detriment by reason of these letters, and we think it would be factually incorrect to hold that the plaintiff intended to waive or did waive a right of rescission which it was expressly asserting. (*Ruffner Bros.* v. *Dutchess Ins. Co.*, 59 W. Va. 432; and cf. *Clark* v. *Kirby*, 243 N. Y. 295, 302.)

There remains to be considered the effect of the defendant's admitted failure to file a proof of loss within the sixty days fixed by the terms of the policy.  He relies upon waiver and must stand upon the waiver pleaded.  The answer alleges that there were

examinations of the books and records of the defendant by the plaintiff, and that on the 17th day of May, 1928, plaintiff in writing notified the defendant that it denied all liability under the terms of the policy, and further " that such denial of liability was a waiver of all formal proofs of loss and of requirement to await payment before bringing suit." We think the learned justice at Special Term correctly held that there was no proof of any such waiver, since the denial of liability pleaded occurred after defendant's admitted failure to file a proof of loss within the sixty-day period.

The learned justice at Special Term held, however, that under the evidence the time for filing the proof of loss was extended by agreement. No such agreement was pleaded and this recovery must, therefore, be under the policy, and not under the policy as modified by any such agreement. The policy specifically provided that the sixty-day period of limitation could· not be waived or extended except in writing. No written agreement was claimed, nor does the evidence make out any oral agreement. All that the plaintiff did was to examine the books and records of the defendant and fail to answer a letter written some days before the sixty-day period expired, in which the defendant wrote, " If there is any further information that you desire from me, please advise me and I will be glad to give it to you." These circumstances do not indicate any intention on the part of the insurance company to agree to extend the sixty-day period.

The judgment appealed from should, therefore, be reversed, with costs, and judgment directed for the plaintiff decreeing a cancellation of the policy, with costs.

DOWLING, P. J., MERRELL, FINCH and MCAVOY, JJ., concur.

Judgment reversed, with costs, and judgment directed for the plaintiff, with costs. The findings inconsistant with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.