**Joseph F. KISTING and Anchor Sales Co., Plaintiffs,**

v.

**WESTCHESTER FIRE INSURANCE COMPANY, Defendant.**

**No. 67–C–27.**

United States District Court
W. D. Wisconsin.

Oct. 2, 1968.

---

William Elden, Chicago, Ill., for plaintiffs.

Samuel Levin and Daniel J. Leahy, Chicago, Ill., for defendant.

## OPINION AND ORDER AND JUDGMENT

JAMES E. DOYLE, District Judge.

This is an action to recover on an insurance policy. The second amended complaint herein alleges that plaintiff Kisting is an Iowa citizen; that plaintiff Anchor Sales Co. (hereinafter Anchor) is an Illinois citizen; that defendant Westchester Fire Insurance Company (hereinafter Westchester) is a New York citizen; and that the amount in controversy, exclusive of interest and costs, exceeds $10,000.

Plaintiffs allege that on March 7, 1966, defendant insured plaintiffs against loss or damage by fire and lightning to the amount of $37,600 on a farm house and farm buildings near Dickeyville, Wisconsin; that the insured property was destroyed and damaged by fire on May 30, 1966, to the extent of $16,067.50; that plaintiffs were the owners of the damaged property at the time of the fire; that plaintiffs have complied with all of the policy provisions; and that defendant refuses to pay.

The defendant's answer admits that the policy was in force on May 30, 1966; denies that the damage was as plaintiffs allege; denies that plaintiffs were owners of the property at the time of the fire and alleges that plaintiff Anchor was "the contract purchaser of the property"; denies that plaintiffs have complied with the policy; and admits that it has not paid out on the policy.

In addition, defendant's answer alleges a number of affirmative defenses:

(1) that plaintiffs neglected to use all reasonable means to save and preserve the property at and after said fire, as required by the policy (paragraph 10);

(2) that plaintiffs failed to give defendant the required proof of loss within the required time (paragraph 11);

(3) "that the hazard was at and prior to the time of the fire increased by reason of the increase in the amount of the insurance on a certain barn, which was the subject of the fire, as ordered by plaintiff Kisting, from $9,500 as it was on a previous policy to $15,000", and that a provision in the policy renders defendant not liable "for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured * * *" (paragraph 12);

(4) that on September 7, 1966, plaintiff Kisting was examined under oath, in the presence of his attorney, and refused to answer a series of questions concerning a document which apparently contained figures relating to the damage claimed to have been caused by the fire and that this refusal was contrary to a provision in the policy (paragraph 13);

(5) that during the September 7, 1966, examination under oath, plaintiff Kisting refused to answer a series of questions concerning his income tax return for 1965, whether he had drawn salary from Anchor Box Company, the amount of his bank deposits on May 30, 1966,

the amount of his payments under an agreement with the government compromising an earlier tax dispute, and whether he had ever had other income tax problems with the government, and that these refusals were contrary to a provision in the policy (paragraph 14) ;

(6) that during the September 7, 1966, examination under oath, plaintiff Kisting refused to answer whether he considered himself or Anchor Sales, Incorporated to be the party to a certain purchase agreement and that this refusal was contrary to a provision in the policy (paragraph 15).

Plaintiffs allege that defendant denied liability by a letter to plaintiff Kisting dated September 28, 1966, and that, therefore, the affirmative defenses alleged by defendant are not applicable.

Defendant now moves for summary judgment on the basis of the refusals to answer the questions summarized in (4) and (5) above.

In selecting the applicable local law governing the determination of rights under this insurance contract I am bound in this diversity action to apply Wisconsin's choice of law rule. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Estate of Knippel, 7 Wis.2d 335, 342, 96 N.W.2d 514, 517 (1959), it was stated:

" * * * [T]he choice of law governing validity and interpretation is basically a question of the intention of the parties except where their intention is to commit a fraud on the law. In the absence of evidence to the contrary the law of the place of making the contract is presumed to be intended unless the place of performance be different. In the latter instance there is a rebuttable presumption that the law of the place of performance controls."

The Supreme Court of Wisconsin has observed that these traditional rules dependent on place of making, place of performance and presumed intention of the parties, have fallen into disfavor, yielding to the "grouping of contacts" or

"center of gravity" theory. Estate of Knippel, supra at 563. See also Chemtec Midwest Services, Inc. v. Insurance Company of North America, 279 F.Supp. 539, 544 (W.D.Wis.1968). The Supreme Court of Wisconsin has not yet found it necessary to declare whether it will adopt the "grouping of contacts" theory in the field of contract law, although it has recently adopted that rule in the area of tort law. Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965). However, for the reasons to be stated immediately hereafter, I conclude that both the traditional rules and the "grouping of contacts" theory require the application of Wisconsin law in the present case.

The record discloses no indication of any conscious intention of the parties as to what state's local law should govern the determination of rights under the insurance policy herein. Under the traditional rules, presumptions must be resorted to. The contract was to be performed in Wisconsin. Under the traditional rules, therefore, there is a rebuttable presumption that the law of Wisconsin applies. § 203.07(1), Wis. Stats., provides: "All insurance against loss or damage to property * * * in this state shall be held to be made within this state." Under this provision the place of making is also Wisconsin. I conclude that under the traditional rules, Wisconsin law applies.

Restatement, Conflict of Laws 2d, Proposed Official Draft § 193, sets out the "grouping of contacts" rule with regard to insurance contracts:

"The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless, with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties, in which event the local law of the other state will be applied."

The location of the insured risk during the term of the policy was clearly Wisconsin. The fact that the parties to the contract were citizens of Illinois, Iowa and New York respectively does not provide contact sufficient to establish a more significant relationship between the contract and any of these states. Accordingly, I conclude that under the "grouping of contacts" theory the local law of Wisconsin governs the determination of rights under the insurance contract in question.

The policy of insurance in the present case contains the following provisions which are also found in the Standard Fire Policy as prescribed by the Wisconsin state legislature, § 203.01, Wis. Stats.:

> "The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and shall submit to examination under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative and shall permit extracts and copies thereof to be made.
>
> " *   *   *
>
> "No suit or action on this policy for recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with  *   *."

During an examination under oath conducted on September 7, 1966, plaintiff Kisting refused to answer several questions propounded to him by defendant's counsel. These questions and answers were as follows:

> "Q. All right, I will show you what has now been marked Exhibit 15 for identification and ask you what that document is?

> "A. That is a document I filed on advice of my counsel to get the representative of the company to meet with me in some manner.
> " *   *   *
> "Q. How did you compile the figures on the document?
> "A. I refuse to answer that question.
> "Q. Who compiled the figures put on this document?
> "A. I refuse to answer.
> " *   *   *
> "Q. Did you, when you delivered this document to Mr. Stuart, make a claim on the insurance company for the barn of $15,000?
> "A. Yes, I refuse to answer that question.
> " *   *   *
> "Q. Did you submit the original of Exhibit 15 to Mr. Stuart as your claim against the insurance company for fifteen hundred dollars damage to the pole shed?
> "A. I refuse to answer on advice of counsel.
> "Q. Did you deliver the original of Exhibit 15 to Mr. Stuart as your claim against the insurance company for $200.00 damage to the milkhouse?
> "A. I refuse to answer on advice of counsel.
> "Q. And did you dictate to the stenographer what to put down on the document?
> "A. I refuse to answer on advice of counsel.
> " *   *   *
> "Q. What was your purpose in delivering the original of Exhibit 15 to Mr. Stuart?
> "A. On advice of counsel I refuse to answer.
> "Q. Did you intend to submit this document, Exhibit 15, or the original of this Exhibit 15 to the insurance company for your

claim of loss of the fire of May 30th of 1966?

"A. On advice of counsel, I refuse to answer.

"  *   *   *

"Q. Going to Schedule 'C' of your 1965 personal income tax there is [sic] two sets of figures on the document. Number 1, there is gross receipts or gross sales less returns and allowances, and opposite that there is a figure of $8,550.11. Going to line 27 for net profit or loss there is a figure of $8,500.11. Would you tell us please from what source you received the income of $8,-550.11?

"A. On advice of counsel I refuse to answer that question.

"  *   *   *

"Q. Is the sum of $8,550.11, which is your claimed total income tax for the year 1965, or your individual tax return, the total amount of money which you earned, all your business for the year 1965?

"A. On the advice of counsel I refuse to answer.

"Q. When was your—what was your total income for the year 1965?

"A. On the advice of counsel I refuse to answer the question.

"Q. Have you drawn any salary from Anchor Box Company?

"A. I refuse to answer the question on advice of my counsel.

"Q. Did Anchor Box Company make any payments for the purchase of the farm?

"A. Yes, I believe Anchor Box—I think I made out a check of a thousand dollars on Anchor Box to Tom Leibold.

"Q. And that was for part payment of the farm?

"A. Yes, sir.

"Q. I will repeat my question. So far in the year 1966 have you drawn any salary from Anchor Box Company?

"A. On the advice of counsel I refuse to answer.

"  *   *   *

"Q. What was your personal net worth on May 30th of 1966?

"A. I wouldn't have any idea.

"Q. What were your total bank deposits on that day? Personal.

"A. On advice of counsel I refuse to answer.

"Q. This $23,000 tax liability you had on May 30th, 1966, from what year did that come from?

"A. That come [sic] from years, I believe, somewhere around '48 to '51 on a claim with the Government and I settled for $25,000.00.

"Q. Settled for how much, sir?

"A. I settled for $25,000.00.

"Q. When did you settle for twenty-five thousand?

"A. Well, approximately a year ago, a little longer.

"Q. Was that by offer and compromise?

"A. Counsel handled it all the way through and it was by offer and compromise, I would say—

"Q. What were the terms of the offer, and compromise?

"A. The terms were I was to pay them a certain percent of my income.

"  *   *   *

"Q. Have you made any payments since this offer and compromise was entered into?

"A. Yes, sir.

"Q. How much?

"A. Yes, sir, I refuse to answer that question.

"Q. Is there any set time period wherein you must pay up the settlement figure of $25,000.00?

"A. Yes, sir on advice of counsel I refuse to answer.

"Q. Did you ever have any other income tax problems with the Federal Government other than this civil suit?

"A. On advice of counsel I refuse to answer."

Defendant contends that the refusal of plaintiff Kisting to answer these questions constitutes a breach of the policy provisions and, therefore, precludes recovery. Plaintiff replies that many of the questions were irrelevant or immaterial to the claim; that he was merely exercising his privilege against self-incrimination by refusing to answer; that all of the questions propounded to plaintiff Kisting were propounded to him in his individual capacity and, therefore, no basis exists for any ruling against plaintiff Anchor; and that, in any event, the denial of liability by defendant in its letter of September 28, 1966, excused plaintiffs from compliance with this provision.

The attention of the court has been directed to no Wisconsin cases which are conclusive on the issue whether the refusal to answer the questions propounded precluded recovery by plaintiffs. The only Wisconsin case in which this issue appears to have been considered is Bonner v. Home Insurance Company, 13 Wis. 677 (1861). Insured in that case brought an action to recover for losses under certain fire insurance policies. A provision of the policies stipulated that the insured should, if required, submit to an examination under oath, by the agent or attorney of the company, and answer all questions touching his knowledge of anything relating to such loss or damage, or to his claim therefor, and subscribe such examination and that until such examination was had, the loss should not be deemed payable. The examination was required, had in part but not subscribed, and, without objection on the part of the insured, adjourned to be completed at a later date. When the time came to resume the examination, the insured refused to submit to further examination and also to subscribe that part which had already been taken. The Wisconsin Supreme Court held that the action should have been dismissed as prematurely commenced, for until the examination was had, the losses were not due and payable.

This proposition does not appear to have been diminished although another rule laid down in Bonner was subsequently overruled, see Hiles v. Hanover Fire Insurance Company, 65 Wis. 585, 590–592, 27 N.W. 348 (1886), and then at least partially resurrected, see State v. Hoffman, 240 Wis. 142, 150, 2 N.W.2d 707, 711 (1942). The holding in Bonner was cited in Hart v. Fraternal Alliance, 108 Wis. 490, 495, 84 N.W. 851 (1901), for the proposition that strict compliance with reasonable stipulations in a policy is necessary. The issue has apparently not come before the Wisconsin courts since that time. Although the holding in Bonner apparently has not been questioned, I am reluctant to rely solely on such a fragile and withered reed.

■ The provisions of the policy involved here are part of the Standard Fire Policy prescribed by the Wisconsin legislature. While the general rule is that policies of insurance are to be construed liberally in favor of the insured, it does not apply to the provisions contained in a standard or statutory policy. Lewis v. Insurance Co. of North America of Philadelphia, 203 Wis. 324, 234 N.W. 499 (1931); Frozine v. St. Paul Fire & Marine Insurance Co., 195 Wis. 494, 218 N.W. 845 (1928); Rosenthal v. Insurance Co. of North America, 158 Wis. 550, 149 N.W. 155, L.R.A.1915B, 361 Ann. Cas.1916E, 395 (1914).

■ It is well settled in other jurisdictions that noncompliance with a provision in an insurance policy requiring the insured to submit to examination under oath precludes recovery by the insured. See Gipps Brewing Corporation v. Central Manufacturers' Mutual Insurance Co., 147 F.2d 6 (7th Cir. 1945) (Ill.); Southern Guaranty Insurance Co. v. Dean, 252 Miss. 69, 172 So.2d 553 (1965); Boston Insurance Co. v. Mars, 246 Miss. 36, 148 So.2d 718 (1963); Hallas v. North River Insurance Co. of

New York, 279 A.D. 15, 107 N.Y.S.2d 359 (1st Dept. 1951), aff'd 304 N.Y. 671, 107 N.E.2d 592 (1952); Robinson v. National Automobile & Casualty Insurance Co., 132 Cal.App.2d 709, 282 P.2d 930 (2d Dist. 1955). Cf. Loughlin v. Firemen's Insurance Co., 88 U.S.App.D.C. 109, 186 F.2d 357 (1950), cert. denied 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1354 (1951); Roberto v. Hartford Fire Insurance Co., 177 F.2d 811 (7th Cir.) cert. denied 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1343 (1950); American Macaroni Mfg. Co. v. Niagara Fire Insurance Co. of New York, 164 F.2d 878 (5th Cir. 1947); Mier v. Niagara Fire Insurance Co., 205 F.Supp. 108 (W.D.La.1962); Mulkey v. United States Fidelity & Guaranty Co., 243 S.C. 121, 132 S.E.2d 278 (1963).

Noncompliance sufficient to preclude recovery has been found where the insured did submit to the examination, but refused to answer certain material questions. In Gipps Brewing Corporation v. Central Manufacturers' Mutual Insurance Co., supra, noncompliance was found where the insured refused to answer questions related to the original statement of loss and other statements which the insured had submitted to the insurer. In Southern Guaranty Insurance Co. v. Dean, supra, noncompliance was found where the insured refused to answer questions pertaining to the financial status of the business which occupied the destroyed premises and to her own financial condition and refused to provide a copy of her income tax return for the previous year and information given to the attorney who was preparing her current income tax return. The court found these to be "material questions highly pertinent to the insurance and the loss." 252 Miss. at 79, 172 So.2d at 557.

The requirement that the insured answer material questions or forfeit recovery under the policy is not absolute, however. In Mulkey v. United States Fidelity & Guaranty Co., supra, the insured was away on a fishing trip when the fire for which he sought to recover occurred. The insured had left the evening of the day before the fire and returned on the following morning shortly after the fire. Upon examination he testified that he had stopped for a beer on the way home but refused to testify where he had stopped on the ground that it was immaterial. At the time of the examination the insurer had reason to believe arson was involved in the fire, whereas the insured was unaware of this possibility. Although the court found the question to be material, it held that recovery was not precluded by the failure to answer:

> "Upon examination, the insured need not answer immaterial questions, and, assuming the good faith of the insured in refusing to answer questions propounded to him in the examination, on the ground that they are immaterial, a subsequent determination by the Court that the questions were material should not result in the forfeiture of the insured's rights under the policy.

> " *   *   *

> "The above question is not material per se to plaintiff's claim; however, when considered in the light of possible arson, plaintiff's whereabouts does become material. * * * Defendant cannot rely on the refusal to answer a question which is not material on its face to avoid the policy when it is aware that the question is material or may become material because of special knowledge it has acquired and thereby lull the insured into a violation of the cooperation clause." 243 S.C. at 130–131, 132 S.E.2d at 283–284.

■■ Plaintiffs contend that many of the questions propounded by defendant, such as those seeking figures on Kisting's 1965 income tax return, had no bearing on the loss. The defendant has alleged arson as an affirmative defense in this case. To prove arson as a defense, the insurer must convince by a "clear preponderance of the evidence." Ziegler v. Hustisford Farmers' Mutual Insurance Co., 238 Wis. 238, 241, 298 N.W. 610 (1941); Oberleitner v. Security Insurance Co., 199 Wis. 220, 223, 225 N.W.

735 (1929). The financial status and financial gain to the insured are circumstances relevant to the arson defense. See McIntosh v. Eagle Fire Company of New York, 325 F.2d 99 (8th Cir. 1963); Stein v. Girard Insurance Company of Philadelphia, 259 F.2d 764 (7th Cir. 1958).

■ I conclude that the questions relating to Kisting's 1965 income tax return were material and that the questions relating to Exhibit 15 were material per se.

■ Plaintiff's next contention is that the privilege against self-incrimination justifies Kisting's refusal to answer the questions involved. Plaintiffs thus seek to utilize the privilege not only as a shield, but also as a sword. This they cannot do. A plaintiff in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have his complaint dismissed upon timely motion. See Stockham v. Stockham, 168 So.2d 320, 4 A.L.R.3d 539 (Fla.1964); Lund v. Lund, 161 So.2d 873 (Fla.App. 1964); Levine v. Bornstein, 13 Misc.2d 161, 174 N.Y.S.2d 574 (S.Ct., Kings Co. 1958); aff'd 7 A.D.2d 995, 183 N.Y.S.2d 868 (2d Dept.), aff'd 6 N.Y.2d 892, 190 N.Y.S.2d 702, 160 N.E.2d 921 (1959); Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483 (1955); Ann. 4 A.L.R.3d 545. Cf. Zaczek v. Zaczek, 20 A.D.2d 902, 249 N.Y.S.2d 490 (2d Dept. 1964).

The same rationale precludes a litigant from claiming the privilege against self-incrimination on cross-examination after he has testified fully on direct examination. See Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

■ Plaintiffs contend that defendant waived compliance with the provision in question by its denial of liability in the letter dated September 28, 1966. For this proposition plaintiffs cite a large number of cases holding that a denial of liability waives the requirement that a proof of loss be filed. None of these cases is controlling. The examination in question here took place on September 7, 1966, several days before the denial of liability. It does not appear that in any of the cases cited by plaintiffs the denial of liability occurred after the time for filing a proof of loss. The theory of the cases holding that a denial of liability waives the requirement that a proof of loss be filed appears to be that in such a case the insured may be lulled into failing to file a proof of loss within the required time. Thus in Engebretson v. Hekla Fire Insurance Co., 58 Wis. 301, 17 N.W. 5 (1883), where the insured filed his proof of loss too late and then the insurer rejected his statement, it was held that the rejection did not operate as a waiver of the proof of loss requirement.

There are cases in other jurisdictions which have found a waiver even when the denial of liability followed the filing of proof of loss. See Hutchings v. Southwestern Automobile Insurance Co., 96 Cal.App. 318, 274 P. 79 (1929); Reser v. Southern Kansas Mutual Insurance Co., 150 Kan. 58, 91 P.2d 25 (1939); Kimmi v. Brown County Farmers' Mutual Fire Insurance Co., 135 Kan. 555, 11 P.2d 706 (1932); Germania Insurance Co. v. Ashby, 112 Ky. 303, 65 S.W. 611, 99 Am.St.Rep. 295 (1901); Fowler v. Potomac Insurance Co., 73 S.W.2d 830 (Mo.App.1934); Altermatt v. Rocky Mountain Fire Insurance Co., 85 Mont. 419, 279 P. 243 (1929); L. T. Madden & Co. v. Phoenix Assurance Co., 70 S.C. 295, 49 S.E. 855 (1904); Insurance Company of North America v. Banker, 9 Tenn.App. 622 (1929); Nash Motor Sales Co. v. National Liberty Insurance Co., 10 Tenn.App. 4 (1928); Walsh's Administratrix v. Vermont Mutual Fire Insurance Co., 54 Vt. 351 (1882); Ann. 49 A.L.R.2d 161, 174–175. In all of these cases, however, the court merely stated the general rule that a denial of liability waives the proof of loss provision without reference to the time of the denial or the rationale underlying a finding of waiver in such a case. A much larger number of cases are in accord with Engebretson v. Hekla Fire Insurance

**150**

Co., supra, in holding no waiver where the denial of liability occurs after the period for filing proofs of loss has elapsed. See J. T. Knight & Son v. Superior Fire Insurance Co., 80 F.2d 311 (5th Cir. 1935), cert. denied 298 U.S. 654, 56 S.Ct. 674, 80 L.Ed. 1381 (1936); Cook v. United States Fidelity & Guaranty Co., 216 Ark. 743, 227 S.W.2d 135 (1950); Lambert v. Travelers Fire Insurance Co., 274 F.2d 685 (5th Cir. 1960) (Fla.); Buysse v. Connecticut Fire Insurance Co., 240 Ill.App. 324 (1926); Lyon v. Kansas City Fire & Marine Insurance Co., 176 Kan. 411, 271 P.2d 291 (1954); Corey v. Niagra Fire Insurance Co., 243 Ky. 34, 47 S.W.2d 955 (1932); Milton Ice Co. v. Travelers Indemnity Co., 320 Mass. 719, 71 N.E.2d 232 (1947); Dailey v. Mid-States Insurance Co., 321 Mich. 438, 32 N.W.2d 698 (1948); McPike v. Western Assurance Co., 61 Miss. 37 (1883); Maddox v. German Insurance Co., 39 Mo.App. 198 (1890); United States Merchants' & Shippers' Insurance Co. v. Klipper, 228 App.Div. 330, 239 N.Y.S. 496 (1st Dept.), aff'd without opinion 254 N.Y. 634, 173 N.E. 899 (1930); Commercial Carving Co. v. Manhattan Fire & Marine Insurance Co., 191 F.Supp. 753 (M.D.N.C. 1961); Beatty v. Lycoming County Mutual Insurance Co., 66 Pa. 9, 5 Am.Rep. 318 (1870); W. & H. Jewelry Co. v. Aetna Casualty & Surety Co., 141 F. Supp. 296 (D.C.R.I.1956); Ann. 49 A.L.R.2d 161, 180–182. Cf. Boston Insurance Co. v. Harmon, 66 Ga.App. 383, 18 S.E.2d 84 (1941).

The rationale of these cases is applicable here. I conclude that the denial of liability by Westchester on September 28, 1966, did not retroactively waive the requirement that the insured submit to examination under oath.

■ Finally, plaintiffs appear to contend that all of the questions propounded to Kisting were propounded to him in an individual capacity and, therefore, no basis exists for a ruling against Anchor. I cannot agree with this reasoning. Under the policy provision in question, the insured agrees to submit to an examination under oath. The insured in this case consisted of both plaintiffs. When Kisting refused to answer certain questions he was clearly acting for Anchor. This is particularly true with regard to the questions relating to Exhibit 15 which Kisting himself submitted to Westchester. By submitting this exhibit Kisting sought recovery for himself and Anchor under the policy. In refusing to answer questions about its preparation Kisting cannot claim that he was not then also acting for Anchor. Plaintiffs' reasoning would make a mockery of the policy provision in question.

Defendant's motion for summary judgment is hereby granted.

It is hereby adjudged that this action is dismissed, with prejudice, with costs to the defendant.