785 F.2d 311
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CHARLES R. WILSON; EUTHA WILSON, Plaintiffs-Appellants,
v.
ALLSTATE INSURANCE COMPANY, a foreign insurance company,
Defendant-Appellee.
 85-1045
 United States Court of Appeals, Sixth Circuit.
 1/24/86
 
 BEFORE: KRUPANSKY and MILBURN, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs/appellants Charles and Eutha Wilson appealed the directed verdict for defendant Allstate Insurance Company in this diversity action alleging breach of an insurance contract and violations of the Michigan Consumer Protection Act.
 
 
 2
 On May 5, 1982, the Wilson's home was burglarized. A police report was filed, but the police officer did not itemize any stolen property in his report because the Wilsons had not had an opportunity to determine the extent of the burglary. However, among the items alleged by the Wilsons to have been stolen was a fireproof safe containing receipts, cancelled checks and other documents of value.
 
 
 3
 One day later, the Wilsons notified their insurer, Allstate Insurance Company (Allstate) of the burglary. The Wilsons initially estimated their loss to be approximately $6,000. The Allstate representative informed the Wilsons that they would be required to report all stolen items to the police and submit to Allstate a detailed list of the stolen property together with a sworn proof of loss form.
 
 
 4
 Subsequently, the Wilsons re-evaluated the extent of their loss which they fixed at approximately $22,000. Inasmuch as this claim was more than triple the original amount, Allstate assigned Arthur Smith, an adjuster in the Specialty Unit, to investigate the burglary. The Wilsons were continuously forwarded proof of loss forms by Allstate which they returned without properly completing. The Wilsons alleged that the forms could not be completed because all of their receipts had been stored in the fireproof box which had been stolen. Moreover, the Wilsons asserted the stores where they had purchased the articles alleged to have been stolen could not provide duplicate receipts unless the Wilsons furnished the exact dates of purchase, which they were unable to do. Finally, the Wilsons advised Allstate that all of the items were either paid for in cash, or by checks made out to 'cash.'
 
 
 5
 On October 1, 1982, Smith visited the Wilson home. The Wilsons represented to Smith that several television sets, home computers, stereo equipment, cameras, video equipment, jewelry and other articles had been stolen. As evidence, the Wilsons presented various documents as proof of their ownership of the stolen items. Among those documents was an owner's manual for a G.E. VHS video cassette recorder which conflicted with their original claim form that listed a Sanyo Betamax Recorder without reference to any G.E. VHS video cassette. The Wilsons also presented Smith with owner's manuals for other items which had been stolen during a previous burglary which had occurred one and one-half years earlier which theft claims had been settled by Allstate.
 
 
 6
 Fred Gnadt, another claims adjuster, continued the investigation after November 5, 1982. He attempted to ascertain replacement costs for some of the items included on the claim form, one of which was an Atari 40-column printer. He determined that no such item was manufactured. Gnadt thereafter requested the Wilsons to execute a sworn declaration which incorporated an itemized list of the Wilson's claim, receipts for the items stolen, and their tax and banking records for the past four years. Upon advice of counsel, the Wilsons refused to produce any tax or banking records and refused to be deposed under oath.
 
 
 7
 Because the Wilsons never supplied a detailed list of stolen property, did not produce receipts for the items allegedly stolen and never reported the property allegedly stolen to the police, Allstate denied the claim.
 
 
 8
 As a result of a mistrial the case was tried a second time. At the first trial, Eutha Wilson testified that all of the stolen property was paid for either by checks written to 'cash' or from cash withdrawls from savings accounts. On cross-examination Allstate offered into evidence the Wilsons' 1981 and 1982 tax returns with attached schedules. Over objections, the court admitted the returns, concluding that they were relevant to show that the Wilsons did not have the required disposable income to purchase all of the items which they alleged were stolen. The trial court also concluded that the tax records were admissible as probative of Eutha Wilson's credibility inasmuch as the returns disclosed a casualty loss for the relevant year of only $10,900, a sum substantially less than the one presented to Allstate. Moreover, the returns incorporated descriptions of stolen articles which descriptions and identification significantly varied from those which were submitted to Allstate.
 
 
 9
 At the second trial, the Wilsons relied upon various Allstate representatives and employees as witnesses. Eutha Wilson testified fully on direct examination. At the conclusion of the direct examination and preliminary to commencement of its cross-examination, Allstate again moved for admission of the tax returns. Wilson's counsel objected on the basis of relevancy. The court overruled the objection, whereupon Wilson, through counsel, advised the court that she would exercise her fifth amendment privilege against self-incrimination and would refuse to respond to cross-examination. The court recognized her right to assert her fifth amendment privilege; however, it expunged her direct testimony. Her husband also advised the court of his intention to exercise his right against self-incrimination if called for cross-examination. Allstate moved to dismiss the action. The court treated the motion as one for a directed verdict and directed a verdict in favor of the defendant Allstate.
 
 
 10
 On appeal, the Wilsons charge that the district court erred in striking Eutha Wilson's direct testimony because she elected to plead the fifth amendment. However, it is well-settled that a party will not be permitted to use the fifth amendment as both a sword and a shield:
 
 
 11
 The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.
 
 
 12
 Brown v. United States, 356 U.S. 148, 155-56, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958). See also Kisting v. Westchester Fire Ins. Co., 290 F.Supp. 141, 149 (W.D. Wisc. 1960) aff'd, 416 F.2d 967 (7th Cir. 1969) (Plaintiff in civil action who asserts privilege against self-incrimination will have his complaint dismissed upon timely motion).
 
 
 13
 Inasmuch as Allstate's affirmative defenses of fraud and failure to comply with the dictates of the insurance policy and state law were substantially dependent upon its ability to attack the credibility of Eutha Wilson and her husband through cross-examination, the trial court's action in expunging Eutha Wilson's direct testimony was appropriate.
 
 
 14
 The Wilsons next charge that the district court erred in granting Allstate's motion for a directed verdict. In Elston-Richards Storage Co. v. Indemnity Ins. Co. of North America, 194 F. Supp. 673 (W.D. Mich.) aff'd, 291 F.2d 627 (6th Cir. 1960), it was stated:
 
 
 15
 The law is well established that in an action against an insurer the burden of proof is upon the insured to establish that its claim falls within the provisions of the policy of insurance.
 
 
 16
 194 F. Supp. at 678 (citations omitted). Allstate's policy of insurance, as well as Michigan law, mandate that an insured must 'furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value of loss claimed; and within 60 days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss . . .'. See, M.C.L.A. 500.2832.
 
 
 17
 Once Eutha Wilson's testimony was stricken, the court had before it no evidence to support the Wilson's claim of breach of their insurance contract. No evidence controverted the testimony of Allstate's witnesses, all of whom testified that the Wilsons' claims were fraudulent and that they had not complied with the terms of the policy or with state law in their refusal to submit proper proofs of claim. Accordingly, the district court properly granted Allstate's motion for a directed verdict.
 
 
 18
 This court has examined the remainder of plaintiff's charges of error and concludes that they are without merit. Accordingly, the decision of the district court is hereby AFFIRMED.